THE NORTH-WESTERN IRON COMPANY VS. MEADE.

CONTRACT: *Word "dollars" omitted: Acceptance of offer.*

1. Where M. by letter offered to sell to W. forty acres of land "for ten per acre, subject to two years' taxes," and W. answered, agreeing to pay "what you ask —$400 and two years' taxes;" *Held*, that M. could not question the existence of a contract of sale on the ground that the word "dollars" was not expressed in his offer—there being no possibility of doubt as to its meaning.

2. M. being at the time out of the state, W. wrote, "If this is the best offer you can make, you may execute the within deed, and send it to Mrs. M. at Green Bay, to also sign and acknowledge, requesting her to forward it to the State Bank of Wisconsin in Milwaukee, where I will call and pay the money and receive the deed." *Held,*

(1.) That before W. could demand a deed or obtain the right of possession, he must have tendered the money to M. in person, at his place of residence or elsewhere.

(2.) That M. would have had a right to tender his deed at W.'s place of residence, which was at Mayville in this state.

(3.) That W.'s letter, having fixed a different place for the delivery of the deed and for the payment of the money, was not an unconditional acceptance of M.'s offer, so as to bind the latter.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to enforce a specific performance of an alleged contract by *Meade* to sell and convey certain lands, and to restrain *Meade* from disturbing plaintiff in its possession of the land, or creating a cloud upon its title. The facts are stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

*Palmer & Hooker*, for appellant, argued, among other things, that the amount of the purchase money was not stated in defendant's offer; and if the court is satisfied as to what offer he actually intended to make, it will not presume that he omitted by mistake what the statute declares shall be stated. *Gundry v. Whittlesey*, 19 Wis., 211. 2. To the point that Wilkes' letter of May 6, was not an acceptance of the defendant's offer, they cited 1 Parsons on Con., 399 et seq.; *Barton v. Kane*, 17 Wis., 37; *Eliason v. Henshaw*, 4 Wheat., 225; 1 Sugd. Vend., p. 116, secs. 14, 16, and p. 123, sec. 39. They also contended that the mailing of that letter, directed to a place within the enemy's lines, was not a constructive delivery.

*Butler & Cottrill, contra.*

DOWNER, J. F. Wilkes, vice president of the *North-Western Iron Company*, April 14, 1864, wrote to the defendant, inquiring of him whether he would sell the land described in the complaint; and if so, for how much. He received the following answer:

"DECATUR, ALA., April 24, 1864.

"Dear Sir: Yours of the 14th inst. was received to-day. I will sell the forty for ten per acre, in cash—subject to two years' taxes. Very respectfully yours, M. J. MEADE.

"Should you wish to communicate with me, direct to Capt. M. J. Meade, 32d Regiment Wis. Vols., via Nashville.    M. J. M."

In answer Mr. Wilkes wrote, and Mr. May, president of the company, deposited in the post-office at Milwaukee, the following letter, on the day of its date, directed to the defendant according to the directions in his letter of April 24:

"MAYSVILLE, May 6, '64.

Capt. M. J. Meade, 32d Reg't Wis. Vols.:

Dear Sir: Yours of the 24th ult. is received.    I do not consider the land worth, cash down, what you ask, $400 and two years' taxes.    At least, you ought to pay the taxes.    But if this is the very best offer you can make, you may properly execute the within deed, and send to Mrs. Meade at Green Bay to also sign and acknowledge, requesting her to forward to the State Bank of Wisconsin in Milwaukee, where I will call and pay the money and receive the deed.    When you mail the deed to your wife, you will at the same time write me.

"Yours respectfully,         F. WILKES."

This letter was never received by *Capt. Meade.*    The deed enclosed was the ordinary warranty deed.    Wilkes resided at Mayville, Wis.; and *Meade's* residence was Green Bay.

It is contended by the appellant that there was no contract of sale, for the reason that *Meade's* letter fixed no certain price of the land—that the words "ten per acre" may mean ten shillings or ten dollars.    We are against the appellant on this point, and do not think men of ordinary intelligence could have had any doubt as to the meaning of the writer.

But the principal question is, whether Wilkes, by his letter of May 6, did unqualifiedly accept *Meade's* proposition of sale. If he had simply said, "I accept your proposition," then there would have been an agreement to sell the land for cash.    The payment of the money and the delivery of the deed, in such case, are concurrent acts.    *Meade* could not have sued Wilkes

for the purchase money, without first having tendered a deed of the land and demanded payment; and Wilkes could not have brought his action to compel a conveyance, without first having tendered the purchase money and demanded the deed. *Shirley v. Shirley*, 7 Blackf., 452. Mayville would have been the place for *Meade* to have tendered his deed to Wilkes and demanded payment of the purchase money. Wilkes, to compel a conveyance, must have tendered the money to *Meade* in person, at his place of residence or elsewhere. Under such a contract, which is silent on the subject of possession of the premises, the purchaser acquires no right of possession or entry until the purchase money is paid or tendered. *Kellogg v. Kellogg*, 6 Barb., 116; *Saffern v. Townsend*, 9 Johns., 35; *Cooper v. Stower*, id., 331. *Meade*, if his proposition had been unconditionally accepted, could have possessed and used the premises, until the purchase money was paid or tendered. It appears to us, therefore, that Wilkes' letter was not an unconditional acceptance of the proposition, but an acceptance with a qualification fixing a different place for the delivery of the deed and the payment of the money, and requiring *Meade* to employ an agent not of his own choosing, instead of selecting his own agent, or attending to his business in person.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.