## GILBERT v. BAXTER ET AL.

1. **Agency:** AUTHORITY TO SELL LAND: LETTERS CONSTRUED. G., a real estate agent in Iowa, but who had never done any business for S., who resided in New York, wrote to S., asking the price of S.'s land in a certain county, and stating that he would, on learning the price, endeavor to effect a sale. S. replied that, to close out all his lands in that county, he would sell for four dollars per acre. *Held* (1) that this did not confer upon G. authority to bind S. by a contract for the sale of the lands; and (2) that, if it were conceded that the letters did confer such authority on G., still he could sell only unconditionally for cash, and that a contract made by him for the sale of all the lands at four dollars per acre, $500 paid in cash, and the balance to be paid when an abstract of title should be furnished showing perfect title in the grantor, was not binding upon S.

2. ———: REPUDIATION OF CONTRACT: GROUNDS ASSIGNED: WAIVER. Where the principal did not know the terms of a contract which one claiming to be his agent had made for him, but he repudiated it on the ground that the person who made it was not his agent, *held* that he was not precluded afterwards from repudiating it on the ground that it was not in accordance with the terms of the letter on which the alleged agent relied for his agency.

3. **Contract:** OFFER TO SELL LAND: ACCEPTANCE. An offer by a resident in New York to sell land in Iowa for four dollars per acre, means four dollars per acre cash, paid in New York, and the offer is not accepted by an agreement to take the land at four dollars per acre payable at Des Moines upon the delivery of the deed.

*Appeal from Pocahontas District Court.*

SATURDAY, MARCH 12.

ACTION in equity for the specific performance of an alleged contract for the sale and conveyance of real estate. The district court denied the relief demanded, and dismissed the petition. Plaintiff appeals.

*Nourse, Kauffman & Guernsey*, for appellant.

*Robinson & Milchrist* and *Hagerman, McCrary & Hagerman*, for appellees.

REED, J.—The defendants J. & J. Stuart & Co. were the owners of about 8,000 acres of land in Pocahontas county.

1. AGENCY: authority to sell land: letters construed.

They resided and carried on business in New York city. A. O. Garlock resided in Pocahontas county, and was engaged in business as a land agent. On the second day of June, 1881, he wrote to defendants the following letter: "*Messrs. J. & J. Stuart & Co., New York*—GENTLEMEN: I have a party that has some trust funds in his hands which he wishes to invest in land in N. W. Iowa, and I think your lands in this county will suit him if the price does. If you want to sell all the lands you hold in this county at once, I think this will be a good opportunity. If you will write me, giving your price per acre, purchaser to take the entire list in this county, I will submit price to the party, and effect a sale if possible."

On the seventh of June the Stuarts wrote the following answer to this letter: "DEAR SIR: We have your favor of second inst., in relation to our lands in your county. We have been getting $5 per acre for small lots; to close out all left, would sell at $4 cash."

The person referred to by Garlock in his letter was F. M. Gilbert. After Garlock received Stuarts' letter, Gilbert made an inspection of the lands, and on the twenty-fifth of June he and Garlock entered into a written contract for the

sale and purchase of the land, Garlock assuming to act as agent for the Stuarts. By this contract Gilbert agreed to pay four dollars per acre for the land, $500 of the amount to be paid in cash on the signing of the contract, and " the balance as soon as a good and sufficient deed of conveyance, with covenants, is furnished, and also abstract of title showing perfect title in the grantor in said deed of conveyance." This contract was subsequently assigned to plaintiff. On the same day Garlock sent to the Stuarts the following telegram: " I have sold your land in this county. Write you." He also wrote them the following letter: " I have closed a sale of your lands in this county to F. M. Gilbert at $4 per acre. Received $500, the balance to be paid on delivery of deed. You may make deed to F. M. Gilbert, of Polk county, Iowa; and you may send the deed to the Valley Bank of Des Moines, Iowa, to be delivered to Mr. Gilbert on payment of balance of the purchase money, and direct the bank to pay me my com. I will make an abstract of title to land, and send Mr. Gilbert. I send you telegram to-day."

On the twenty-second of June the Stuarts entered into a negotiation with defendant Kinsley for the sale of the land to him, and gave him an option to buy it at $3.25 per acre, which was to terminate on the twenty-eighth of that month. They received Garlock's telegram on the twenty-seventh, and immediately sent the following answer: " Party here has refusal for all till Tuesday; will advise then." On the twenty-eighth Kinsley appeared, and offered to take the land at $3.25 per acre, and they entered into a written contract with him by which they agreed to sell and convey it at that price. Kinsley was acting in the matter for defendant Baxter, and the land was subsequently conveyed to him in pursuance of the contract. Kinsley was informed before the contract was entered into that Stuarts had an offer of four dollars per acre for the land in Iowa, but neither he nor they knew at that time that the contract had been entered into by Garlock and Gilbert; but the suit was instituted before any but a small

amount of the purchase money was paid, and when the balance was paid, and the conveyance was executed, they knew of its execution, and were fully informed of the claim made by plaintiff under it.   On the same day Stuarts sent the following telegram to Garlock: "DEAR SIR: We yesterday received your message as to our lands in Pocahontas county; to which we replied by wire that party here had refusal till Tuesday, (today,) and we now wire you party took all lands in your county.   Of course there's no more to be added on above account."

The relief demanded by plaintiff is that the parties in whom the title is now vested be required to convey the property to him.   This relief is demanded on the ground (1) that the written contract executed by Garlock was binding on the Stuarts, and, as the other defendants had notice of that contract when they paid the purchase money for the property, and received the conveyance, they took it charged with the equities created by the contract; and (2) if the contract was not binding on the Stuarts, their letter of the seventh of June was a distinct offer to sell the land at four dollars per acre, which was accepted by Gilbert, and of which acceptance they were notified by Garlock's letter of the 25th, and that the two letters constitute a contract for the sale of the land at that price, which was binding from the time Garlock's letter was deposited in the mail.

In our opinion, neither of these positions can be sustained. Before plaintiff can recover on the first ground, he is required to establish that Garlock had authority from the Stuarts to execute the contract in their name, and this he has not done. Garlock had never acted for them in any transaction before the one in question, and there is no claim that he had authority to bind them by the contract, unless such authority was conferred by their letter of the seventh of June.   That letter was written in answer to his communication asking for information as to the price at which they were willing to sell their land.   True, he stated in his letter that he would

submit the price to the party to whom he referred, and endeavor to effect a sale. But in their answer they stated merely the price at which they would sell. They simply imparted the information for which he had asked, and their letter contains no intimation that they desired or expected him to contract in their name for the sale of the property, if his customer should be willing to buy it. The authority to do that was not expressly conferred, and it cannot be implied either from the language of the letter or the circumstances under which it was written. The mere statement of the price at which they were willing to sell, clearly cannot be construed as creating an agency with power to contract for the sale of the property. The case differs very materially in its facts from *Hopwood v. Corbin*, 63 Iowa, 218, cited by appellant. In that case the authority to sell the land was expressly conferred on the agent by the letters of the defendant, and the judgment for specific performance of the contract was based on that fact, while in this no such authority was given.

But, if it should be conceded that Garlock was empowered to contract for the sale of the land, there would still be an insurmountable difficulty in plaintiff's case. If he is entitled to recover at all, his recovery must be based upon the contract executed by Garlock, and he must show that the agent had authority to bind the principal by that particular agreement. The answer of the defendants is but a general denial, it is true, but it puts in issue the allegation that the contract sued on is the contract of the Stuarts. They were not required to plead specially that the agent had exceeded his authority in making the contract, but that question arises upon their denial that the contract was their agreement. If the letter of the seventh of June can be construed as conferring authority on Garlock to contract for the sale of the land, such authority is limited by the terms of the letter in two particulars, viz: The sale must be of all of the lands owned by the Stuarts in Pocahontas county; and it must be for four dollars per acre cash. By no possible construction can it be

Gilbert v. Baxter et al.

said that the agent was empowered to contract upon any
other terms or with any other conditions; yet the contract
which he assumed to make provides for the payment of but
a small portion of the purchase money in cash, while the
balance was to be paid when an abstract of title should
be furnished, showing " perfect title in the grantor." Let it
be conceded that, by usage, the vendor is required to furnish
an abstract of title, yet it does not follow that the agent,
whose authority was to sell for cash, had authority to bind his
principal by an agreement containing a provision for pay-
ment when an abstract should be furnished showing perfect
title in him. The contract was not for the absolute sale
of the property; for it is at least doubtful whether the
buyer could be compelled to consummate the purchase, if,
upon an inspection of the abstract, it should appear that
the title to any of the property was defective. Neither
was it a sale for cash, for by the terms of the contract the
payment was dependent on the furnishing of an abstract
showing " perfect title in the grantor."

It is true, the principal did not assign, as a reason for
repudiating the contract, that the agent had exceeded his
authority in making this provision a part of it.
But, when they repudiated what Garlock had
done, they did not know that such provision was
incorporated in the contract. They had not then
been informed that he had assumed to bind them by a written
agreement. They proceeded on the theory that they had not
empowered him to bind them by any contract for the sale of
the land. They clearly did not by so doing waive the right
to make the objection that he had exceeded his powers by
making that condition a part of the contract, when that fact
came to their knowledge. It is proper to say in this connec-
tion that Gilbert was fully informed as to the extent of Gar-
lock's authority when he entered into the contract. He had
seen the correspondence, and it is presumed that he under-
stood the effect of the letters.

2. ———: re-
pudiation of
contract:
grounds as-
signed:
waiver.

Garlock's letter of the twenty-fifth of June was not an acceptance of the offer contained in Stuarts' letter of the seventh, for the acceptance was upon conditions not contained in the offer. The offer was to sell for four dollars per acre, cash. Under the offer, the Stuarts were entitled to have the money paid to them in New York, where they lived. By the acceptance, the money was to be paid in Des Moines on the delivery of the deed there. The case in this respect is like *Sawyer v. Brossart*, 67 Iowa, 678.

3. CONTRACT: offer to sell land: acceptance.

The judgment of the district court will be

AFFIRMED.