CURTIS LAND & LOAN COMPANY, Respondent, vs. INTERIOR LAND COMPANY, Appellant.

*December 1—December 15, 1908.*

*Vendor and purchaser: Contracts: Form: Letters: Specific perform-ance: Breach by vendor: Breach by vendee: Remedies: Consid-eration: Proposals: Acceptance: Conditions: Title to be passed: Tax certificates: Rights and title of holder: Parol evidence: Admissibility to affect writings: Surveys: Evidence: Corpora-tions: Officers and agents: Presumption as to authority: Es-toppel.*

1. It is the settled law of Wisconsin that a valid and binding contract for the sale of real estate may be made through the medium of letters.

2. In case of a breach of such a contract on the part of the vendor, the vendee may enforce specific performance, and, in the event of a breach on the part of the vendee, the vendor may main-tain an action to recover the purchase price.

3. The promise to pay on the part of a vendee of lands is a suffi-cient consideration for the agreement to sell by the vendor.

4. In case of a contract to sell lands, evidenced by letters, the let-ters must contain all the elements necessary to constitute an unambiguous contract. Among other things there must be a definite offer to sell on the part of the owner of the land and an unqualified acceptance of such offer on the part of the purchaser.

5. In case of a contract to sell lands, evidenced by letters, the vendee in his letter of acceptance cannot attach any condition to his acceptance, even to the extent of undertaking to dictate the place where payment shall be made. If the attempted accept-ance is coupled with any condition that varies or adds to the offer to sell, it is not an acceptance but a counter proposition.

6. Where the letter of acceptance contains a mere suggestion or request that payment be made at a particular place, but such request is not a 'condition attached to the acceptance, it does not amount to an attempt to vary the terms of the offer to sell and will not defeat an action for specific performance.

7. Defendant offered by letters to sell the SW SW 6–35–8, to which plaintiff replied, "We will take your SW SW 6–35–8, Lincoln county, Wisconsin." *Held*, that the ambiguity as to the loca-tion of the land contained in defendant's offer was made cer-tain by plaintiff's letter, which attached no condition to his acceptance, there being no claim of any misunderstanding as to the lands intended.

8. An agreement to sell land at a sound price, without reservation or exception, implies that a marketable title free of incumbrances will be passed to the vendee upon compliance with his obligations.

9. Under an agreement by a vendor of lands to execute a good and sufficient conveyance the purchaser may demand a clear title as well as that it be assured him by proper covenants.

10. The holder of a tax certificate, if in fact held adversely, has an equitable title to the lands.

11. A tax certificate imports, while outstanding, an absolute and paramount right, subject only to the right of redemption, and constitutes an incumbrance upon the land and a cloud upon the title.

12. A vendee of lands, without reservation as to title, has the right to insist that outstanding tax certificates be redeemed, and by so doing adds nothing to the obligation the vendor assumed when his offer was accepted.

13. A statement in a letter accepting an offer to sell lands: "If it is just as satisfactory to you, will you please send your deed to [a bank named] for collection," is a mere suggestion or request, and not an attempt to impose a condition not in consonance with the offer.

14. Under a written contract to convey the SW SW 6–35–8 in a certain county of this state at a specified price per acre, the unit upon which the price was made and accepted is the acre, and there is no such ambiguity in the writings as would admit parol testimony to vary the terms of the written agreement.

15. In the absence of proof to the contrary, the presumption exists that a government survey shows the correct acreage of a particular forty.

16. One who knows that the officer or agent of a corporation with whom he is dealing habitually transacts certain kinds of business for such corporation under circumstances which necessarily show knowledge on the part of those charged with the corporate business, has a right to assume that such officer or agent is acting within the scope of his authority.

17. A corporation is estopped from denying that its agents possess all the authority which it gives them the appearance of having.

18. A corporation is estopped from denying that its general officer has the powers which it has customarily allowed him to exercise.

19. Where the secretary and treasurer of a corporation is clothed with apparent authority to do acts which he does, his acts are binding on the corporation.

APPEAL from a judgment of the superior court of Lincoln county: ALMON A. HELMS, Judge. *Affirmed.*

This action is brought to compel the defendant to specifically perform a contract alleged to have been made for the sale of real estate. The contract is based entirely upon letters passing between the parties. On December 10, 1906, the plaintiff wrote the defendant as follows:

"Will you please let us know your cash price per acre for SW SW 6–35–8."

Two days later the defendant answered, acknowledging receipt of this letter, and stating:

"Will say our cash price on SW SW 6–35–8 is $6 per acre. Would be pleased to sell same to you."

On December 17th plaintiff, replying to this letter, wrote as follows:

"Your favor of the 12th inst. received. We will take your SW SW 6–35–8, Lincoln county, Wisconsin, for your cash price of $6 per acre. Your records probably show the acreage, which is 22.13 acres. If it is just as satisfactory to you, will you please send your deed to National Bank of Merrill for collection. Kindly have it made out to *Curtis Land & Loan Co.,* a Wisconsin corporation. We note that this description was sold in 1903 and 1904 to F. J. Smith for delinquent taxes. Please take care of these taxes. We may later be able to do some business with you respecting your other descriptions in the section named, and are not ready to consider them just now."

On December 19th the defendant acknowledged receipt of this letter as follows:

"Your letter of the 17th at hand and noted. Will say that our records do not show that this is a fractional forty, and we would have to investigate this further, but we could sell it to you, as we understand that this is a full forty. With reference to this description being sold for taxes to F. J. Smith, or in the name of F. J. Smith, are tax certificates we had him buy in for us. We will look this matter up

promptly and let you know just as soon as we can have it looked up. We do not anticipate selling this forty for less than $240, which was at the rate of $6 per acre for the full forty. We will investigate and let you hear from us promptly."

The remaining portion of the correspondence consisted largely of claims made by the plaintiff that the foregoing letters constituted a complete contract, and of denials of such claims on the part of the defendant.

The trial judge decided that a valid contract was entered into between the parties and that the plaintiff was entitled to a decree for specific performance, and judgment was entered accordingly, from which judgment the defendant brings this appeal.

In addition to contending upon the trial that the letters did not constitute a valid contract, the defendant likewise asserted that such letters were written by a representative of the defendant who had no authority to quote prices on the parcel of land in question, and that the defendant corporation was not bound by the acts of its agent in so doing.

For the appellant there was a brief by *Jeffris, Mouat, Smith & Avery,* and oral argument by *L. A. Avery.*

For the respondent there was a brief by *Smart & Curtis,* and oral argument by *E. M. Smart.*

BARNES, J. The appellant urges that the judgment appealed from is erroneous in the following particulars: (1) The court had no jurisdiction of the subject matter of the action. (2) The contract is executory and is without consideration, and equity will not enforce specific performance of such a contract. (3) The letters passing between the parties did not make a contract. (4) No competent evidence was offered to show the acreage of the parcel of land in controversy. (5) The agent and officer of the defendant corporation who carried on the correspondence in its behalf had

no authority to bind his principal. (6) The alleged contract was void under sec. 2304, Stats. (1898).

The first, second, third, and sixth errors assigned are so correlated that they may well be treated together. No claim is urged upon our consideration to the effect that the superior court of Lincoln county had not jurisdiction concurrent with that of the circuit court of such county to try actions brought to compel specific performance. The first error assigned is in fact predicated upon the proposition that no contract was entered into between the parties, and, in any event, if the writings are held to constitute a contract, the plaintiff's appropriate remedy is an action at law to recover damages for the breach of such contract. The second, third, and sixth alleged errors relate solely to the legal effect that should be given the letters passing between the parties and constituting the alleged contract.

It is the settled law of this state that a valid and binding contract for the sale of real estate may be made through the medium of letters. It is just as well settled that, in case of a breach of such contract on the part of the vendor, the vendee may enforce specific performance, and that, in the event of a breach on the part of the vendee, the vendor may maintain an action to recover the purchase price. The promise to pay on the part of the vendee is a sufficient consideration for the agreement to sell by the vendor. *N. W. Iron Co. v. Meade,* 21 Wis. 474; *Clark v. Burr,* 85 Wis. 649, 55 N. W. 401; *Baker v. Holt,* 56 Wis. 100, 14 N. W. 8; *Matteson v. Scofield,* 27 Wis. 671; *Kreutzer v. Lynch,* 122 Wis. 474, 100 N. W. 887; *W. G. Taylor Co. v. Bannerman,* 120 Wis. 189, 97 N. W. 918. The cases cited hold that such letters must contain all the elements necessary to constitute an unambiguous contract, and that there must be contained therein a definite offer to sell on the part of the owner of the land and an unqualified acceptance of such offer on the part of the purchaser. The vendee in his letter of acceptance may not at-

tach any condition to such acceptance, even to the extent of undertaking to dictate the place where payment shall be made. If his attempted acceptance is coupled with any condition that varies or adds to the offer to sell, it is not an acceptance, but is in reality a counter proposition. *N. W. Iron Co. v. Meade, supra; Baker v. Holt, supra.* Where the letter of acceptance contains a mere suggestion or request that payment be made at a particular place, but such request is not a condition attached to the acceptance, it does not amount to an attempt to vary the terms of the offer to sell, and will not defeat an action for specific performance. *Matteson v. Scofield,* 27 Wis. 671; *Kreutzer v. Lynch,* 122 Wis. 474, 100 N. W. 887. Applying these principles of law to the errors under consideration, the case does not present any unusual difficulties.

The letter of defendant written December 12, 1906, was ambiguous as to the parcel of land which was the subject thereof, although both parties undoubtedly understood it to refer to the southwest quarter of the southwest quarter of section 6, township 35 north, of range 8 east, in Lincoln county. The ambiguity consisted in the correspondence up to this point not showing the state in which the land was located, or whether the township was north or south or the range east or west. Plaintiff's letter of acceptance referred to the land as being located in Lincoln county, Wisconsin, and with this addition to the description referred to in the former correspondence there was no ambiguity about it whatever. This was the letter that resulted in the final consummation of the agreement. In addition to accepting defendant's offer it cleared up something that the parties had in mind by making it a part of the writings. The defendant made no protest against the declaration that the land was located in Lincoln county, and does not now make any claim that both parties did not perfectly comprehend and understand that they were dealing with land correctly described in

the letter last referred to. The addition of the words "Lincoln county, Wisconsin," to the description in plaintiff's letter of acceptance attached no condition to the acceptance of the offer to sell, but elucidated something that was perfectly apparent to the contracting parties, and clarified the situation by obviating the objection that the writings were not sufficiently definite as to description.

Plaintiff's letter of acceptance also contained the following statement: "We note that this description was sold in 1903 and 1904 to F. J. Smith for delinquent taxes. Please take care of these taxes." This letter makes it clear that the plaintiff expected the defendant to take care of the outstanding tax certificates mentioned in the letter. If this portion of the letter contained any requirement that was not comprehended in the defendant's offer to sell, then it may well be asseverated that plaintiff did not make an unqualified acceptance, but a conditional one, and that therefore no contract was made. If the legal effect of defendant's offer to sell the land at a stated price was that it should furnish a marketable title free and clear of outstanding liens and incumbrances, then the paragraph quoted added nothing to the defendant's proposition to sell and did not constitute a counter proposition. The defendant's offer to sell is silent as to the nature of its title and as to the character of the conveyance which it purposed giving. But the law seems to be well settled that an agreement in general terms to convey real estate, without specifying the nature of the title held by the vendor or the kind of a deed which is to be given, calls for a conveyance of the entire interest in the land sold, by a good and sufficient deed. In other words, an agreement to sell at a sound price, without reservation or exception, implies that a marketable title free of incumbrances will be passed to the vendee upon compliance with his obligations. *Young v. Wright,* 4 Wis. 144; *Wright v. Young,* 6 Wis. 127; *Bateman v. Johnson,* 10 Wis. 1, 3; *Arentsen v. Moreland,* 122 Wis. 167, 175, 99 N.

W. 790.   On an agreement by the vendor of lands to execute
a good and sufficient conveyance the purchaser may demand
a clear title as well as that it be assured him by proper cove-
nants.   *Davis v. Henderson,* 17 Wis. 105, 107; *Taft v. Kes-
sel,* 16 Wis. 273, 277.   The decisions outside of this court
are generally to the effect that an agreement to convey, in the
absence of any reservation or exception therein, requires the
vendor to convey a marketable title free of incumbrances.
*Drake v. Barton,* 18 Minn. 462 (Gil. 414); *Dwight v. Cut-
ler,* 3 Mich. 566; *Sibley v. Spring,* 12 Me. 460; *Hill v. Ho-
bart,* 16 Me. 164; *Shreck v. Pierce,* 3 Iowa, 350; *Bartle v.
Curtis,* 68.Iowa, 202, 26 N. W. 73; *McGuire Bros. v. Blan-
chard,* 107 Iowa, 490, 78 N. W. 231; *Swan v. Drury,* 22
Pick. 485; *Van Eps v. Schenectady,* 12 Johns. 436, 442;
*Dearth v. Williamson,* 2 Serg. & R. 498; *Swayne v. Lyon,* 67
Pa. St. 436.

The tax certificates referred to in the plaintiff's letter of
December 17th were outstanding liens against the land.
One of the certificates was subject to a tax deed and the
other would be subject to deed within a few months.   The
holder of these certificates, if they were in fact held adversely
to the defendant, had an equitable title to the land.   *Eaton
v. Manitowoc Co.* 44 Wis. 489.   They imported, if outstand-
ing, an absolute and paramount right, subject only to the
right of redemption.   *Coe v. Manseau,* 62 Wis. 81, 22 N. W.
155.   They constituted an incumbrance upon the land (*Pills-
bury v. Mitchell,* 5 Wis. 17) and a cloud upon the title (*Dean
v. Madison,* 9 Wis. 402).   It is apparent that the defendant
would not be complying with the terms of its offer to sell in
the event of its refusal to take care of these outstanding tax
liens, and that therefore the plaintiff might insist in its let-
ter of acceptance that the certificates in question, if outstand-
ing, be redeemed, and that by so doing it added nothing to
the obligations the defendant had assumed in the event of its
offer being accepted.

Aside from the considerations referred to, defendant's offer to sell was without qualification and the plaintiff's acceptance was without condition. The statement in plaintiff's letter, "If it is just as satisfactory to you, will you please send your deed to National Bank of Merrill for collection," was a mere suggestion or request, and not an attempt to impose a condition upon the defendant not in consonance with its offer. It is apparent that there was no intention on the part of the plaintiff to make its acceptance conditional upon the deed being sent to Merrill for collection.

The plaintiff contended that the actual acreage of the description involved and the quantum of land for which it should pay was 22.13 acres. The defendant asserted that it was entitled to pay for forty acres, and, inasmuch as it supposed it was selling forty acres, whereas the plaintiff supposed it was buying a lesser quantity, the minds of the parties never met on the consideration to be paid. There does not seem to be any ambiguity in the contract in this regard. Certainly an acre of land ordinarily means 160 square rods. There is no claim made in this case that the government survey did not accurately show the actual acreage of the parcel of land in question. It is notorious that there are variances in the actual acreage of quarter-quarter sections in government surveys, not often as great as is found here, but still very considerable. A patent conveying the ordinary quarter-quarter section of land generally recites that it contains forty acres more or less according to the government survey. It seldom happens that a description having a range line for its western boundary, as in the case before us, or one having a township line for its northern boundary, contains just forty acres. The variances in such cases are often wide. Sometimes the acreage largely overruns, sometimes it falls short. If the description in question contained fifty or sixty acres, as many descriptions lying immediately east of range lines do, we entertain no doubt that plaintiff would, upon accept-

ance of defendant's offer, be compelled to pay upon the actual acreage. The unit referred to in the correspondence of both parties, and upon which a price was made and accepted, was the acre, not the forty, and there does not appear to be any such ambiguity in the writings as would admit of any parol testimony to vary the terms of the written agreement. In defendant's letter written in reply to plaintiff's letter of acceptance it does not place any different construction upon the contract. It said that "our records do not show that this is a fractional forty, and we would have to investigate this further, but we could sell it to you, as we understand that this is a full forty." This is not an assertion on defendant's part that its offer, in reality, was one to sell the description for $240. Its statement amounted to little more than saying that, because its records did not show the forty to be fractional, it would have to satisfy itself as to what the acreage was before making a conveyance.

It is urged that the proof is insufficient to sustain the findings of the court that the acreage of the description of land in question was only .22.13. An examination of the testimony discloses that there was sufficient evidence to sustain a finding to the effect that the government survey showed the acreage to be in accordance with the finding of the court. In the absence of proof to the contrary, the presumption would be that the correct acreage was shown by such survey.

The remaining error relates to the authority of F. J. Jeffris, who carried on the correspondence for the defendant, to bind it. There were three stockholders in the defendant corporation: D. K. Jeffris, D. H. Jeffris, his wife, and F. J. Jeffris, each of whom was a director. D. K. Jeffris was president, D. H. Jeffris vice-president, and F. J. Jeffris secretary and treasurer. F. J. Jeffris carried on the correspondence in behalf of the defendant with the plaintiff, and it is asserted that he did not have the authority to bind the defendant by his offer to sell, no such authority having been

conferred, at least by any formal action taken by the board of directors of the corporation. In reference to the subject of authority, F. J. Jeffris testified that he and D. K. Jeffris handled the business of the corporation; that he generally did the work and his brother did the rest; that he kept the books, answered letters, signed the name of the company, and closed deals for the sale of lands, subject to the approval of his brother; that, if a proposition came to the office to buy a parcel of land for a stated price, he generally answered it, accepting or refusing the offer without consulting any one; that his brother knew that he answered such letters without consultation, and knew that the witness was carrying on the business of the defendant in this way at the time the correspondence referred to took place; that he consulted his brother as occasion required; that the wife of D. K. Jeffris left the business to the witness and her husband; that the company did not call directors' meetings when it desired to sell lands; that his practice was not to consult his brother before making such an offer to sell as was contained in his letter to the plaintiff; and that his brother left to him the matter of making quotations, and in making quotations or offers he signed the name of the company and placed his initials thereunder. The court found on sufficient evidence that the managing agent of the plaintiff, who conducted the negotiations on its behalf, knew F. J. Jeffris and knew the position which he occupied in the *Interior Land Company,* and knew that he acted generally for the defendant in fixing prices and in dealing with its lands.

A very large part of the business of the country is carried on by corporations. It certainly is not the practice of persons dealing with officers or agents who assume to act for such entities to insist on being shown the resolution of the board of directors authorizing the particular officer or agent to transact the particular business which he assumes to conduct. A person who knows that the officer or agent of the corpora-

tion habitually transacts certain kinds of business for such corporation under circumstances which necessarily show knowledge on the part of those charged with the conduct of the corporate business assumes, as he has the right to assume, that such agent or officer is acting within the scope of his authority.    It has recently been said by this court that the secretary of the ordinary business corporation is just as much its general managing agent as is the president, both performing interchangeably a wide range of duties, and exercising much the same functions in the conduct of corporate business as are exercised by general partners in a copartnership business.    *Swedish Am. Nat. Bank v. Koebernick,* 136 Wis. 473, 117 N. W. 1020.    A corporation is estopped from denying that its agents possess all the authority which it gives them the appearance of having.    It is estopped from denying that a general officer had the power which it has customarily allowed him to exercise.    This subject is so fully discussed in the case of *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234, and in the cases therein referred to, that no good purpose would be served in reiterating a doctrine which is well established and which we think is fairly applicable to the facts before the court in this case.    The secretary and treasurer of the defendant was clothed with apparent authority to do the acts which he did do, and his acts are binding upon the corporation.

*By the Court.*—Judgment affirmed.