CRAM, Appellant, vs. LONG and another, Respondents.

*April 30—May 31, 1913.*

*Principal and agent: Authority to sell real estate: Vendor and pur-
  chaser: Essentials of contract: Offer and acceptance: With-
  drawal of offer.*

1. Authority to an agent to rent real estate, collect the rents, and
   look after the property generally, conferred upon him no power
   to sell it; nor did the mere statement by the owner in a letter
   to such agent, "As to selling the place, I would let it go for
   $3,500," authorize the agent either to enter into a written con-
   tract for the sale of the property or to secure a purchaser and
   charge a commission for so doing.
2. An offer to sell at a certain price, contained in a letter written
   by the owner of real property to her agent, was not unquali-
   fiedly accepted, so as to be binding upon the owner, by the
   execution of a contract between such agent and the purchaser
   reciting that a part of the price had been paid to the agent
   and providing for payment of the balance to him upon deliv-
   ery of a warranty deed and an abstract "showing perfect title
   of record."
3. Such an offer did not authorize a contract by the agent provid-
   ing for payment of the purchase price to him, it being the
   owner's legal right to have the money paid to herself person-
   ally at her place of abode.
4. The owner of real property having made an offer to sell it upon
   certain terms, has a right to change her proposition or with-
   draw the offer entirely at any time before it is accepted.
5. One to whom an offer to sell real estate is made has not the
   right to change the place of payment or otherwise vary the
   terms proposed, but must accept the offer unqualifiedly if he
   wishes to make a binding contract.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge.   *Affirmed.*

This action was brought to enforce specific performance of
a land contract.   The property in question was owned by
*Olivia Long* and *Emma M. Long,* her daughter, who resided
at Glens Falls, New York.   They employed one Charles Ken-
dall of Beloit, where the property was situated, to rent the

real estate and attend to the repairs, insurance, and taxes thereon, and otherwise manage the same. The business between the defendants and Kendall was transacted largely by *Olivia Long.* On December 26, 1905, Kendall, assuming to act as the defendants' attorney in fact, entered into a land contract with the plaintiff, *Cram,* by the terms of which they agreed to sell their property to *Cram* for $3,500. The sum of $50 was paid in cash and the balance was to be paid when *Cram* was furnished with a warranty deed and an abstract showing perfect title of record.

The *Longs* refused to carry out the contract entered into with Kendall. On May 29, 1906, *Cram* tendered to Kendall the balance of the purchase price and demanded a deed and abstract of the premises in question. Before this action was commenced a warranty deed of the real estate was sent to the defendants for execution and they declined to sign it.

Under date of October 10, 1905, *Mrs. Long* wrote a letter to Kendall in which she said: "As to selling the place, I would let it go for $3,500." Under date of December 31, 1905, she wrote Kendall another letter in which she said:

"We have been trying to come to some decision about selling the place. I do not know but we had better try and sell it if we could get out with a whole garment. My daughter thinks we ought to get $3,500, but I think we might take say $3,400. If he would pay you the commissions and leave me the rent until May."

On January 14, 1906, *Mrs. Long* wrote to Kendall as follows:

"Your letter was received, but I thought you a little previous to sell the place and take money on it without consulting me. When I said I would take $3,500, I meant $3,500 over and above expenses. Now if you can send a check for that amount and give me the rent up to the first of May to compensate for putting in street water, we will send you a warranty deed."

Under date of January 16th, *Cram,* the party who agreed to purchase the property, wrote as follows:

"On December 27 last, I purchased of your agent, Mr. Chas. Kendall, your property on Bridge street, and I have been expecting the deed and abstract as promised by Mr. Kendall, and this delay has been an embarrassment to me. I fulfilled all his requirements and bound the bargain by a money consideration and hold his receipt to that effect. This morning Mr. Kendall shows me a letter from you in which you make demands that do not concern me, being a matter entirely with your agent, all but that part concerning possession, and in that particular I have something to say. At the time of my purchase it was agreed that the deeds would be executed promptly and the abstract written up as early as possible showing good title, and upon the delivery of said deed I took immediate possession, and this is my present position. I to take immediate possession. Delays are costly and I cannot permit them. The purchase is actual, and your agent, Mr. Kendall, fully authorized to make such sale, and I must insist on prompt action. If you prefer to send your papers to any bank here it will be agreeable to me, and I should not think that Mr. Kendall would object." ·

The first one of Kendall's letters to *Mrs. Long* pertaining to this matter that was offered in evidence was dated January 17th, in which he evidently refers to *Mrs. Long's* letter of January 14th, and says:

"Then you say that if I will send you a draft for $3,500 and give you the rent up to the first of May. Now, *Mrs. Long,* you could not expect that I should furnish a deed and abstract and not get any commission out of the transaction and pay you all that you ever asked for the place. . . . I wrote you that as *Mr. Cram,* who I have sold to, wished to hear from you about the deed and abstract. I asked you to answer by return mail. I did not get an answer and I telegraphed and asked you for an answer, but got your letter. . . . I showed *Mr. Cram* your letter and he said he should write you, as he felt very much disappointed, as he has no reason to suppose that you would want more than ·you had instructed me to

sell it for, and what he will do about it he did not say, but if he writes you he will express his views. . . . I am sorry that after so many years you feel that I made so great a mistake in not writing you about the sale before receiving the money, which I had no reason to think it would have made any difference, as when I had an offer from a man that I could depend upon I considered best to accept it, as I had never had anything in my hands before that I could rely upon; all I ever had was talk."

Under date of January 20th *Mrs. Long* replied to *Cram's* letter, the material part of which reply is as follows:

"I thought when I received your letter I would not answer, but I like what is fair, and I just inform you that I never gave Mr. Kendall authority, or any one else, to sell our property; let him show his authority; last letter he wrote said that a party wanted to know what I would take for the place. I said thirty-five hundred dollars and that is all I heard about it until now. Mr. Kendall has been our ·agent, to take care of the place, get tenants, collect rents, pay taxes, see about repairs, etc. My daughter holds deed for one half of the place."

Under date of January 24th *Mrs. Long* wrote Kendall, the material part of which letter is as follows:

"As I wrote you, my price, $3,500, was that without any extra expense. I mean it ·and rent up to the first of May. I have an abstract. . . . Now you send me $3,500 and a paper for the rent to the first of May, we will send deed all right. I prefer to do the business with my banker or lawyer here."

On January 26, 1906, Kendall wrote *Mrs. Long* as follows:

"I have been waiting to get an answer to a letter, to one that I wrote you in answer to your letter, but as I do not get it I saw *Mr. Geo. H. Cram* and he said that he would pay you the $3,500—and you send him a warranty deed signed by yourself and daughter, you send him an abstract and he would pay you the $3,500. You send the deed and abstract

to any bank here to be delivered when the amount of $3,500 is paid and would allow you all rents collected up to the first day of May next, and as you think that was a little premature in selling I will not charge you any commission, but let it go.  So please send on your deed properly signed with the abstract and the money will be paid on its delivery."

Under date of January 29th Mr. Kendall wrote *Mrs. Long* as follows:

"Yours of January 25 (mailed) came to hand last Saturday, and I told *Mr. Cram* that you would send a deed when you got a draft for $3,500—with the assurance of receiving the rent up to the first day of May next.  He gave me an agreement that I send you that you are to have all rents collected up to the first day of May next, and says that if you will make the deed out and leave it with some bank that you may select, with the abstract to be sent to him on receipt of a draft sent to said bank when the draft was received; if you preferred to have the draft sent there before the deed was delivered to him."

On January 29th *Mrs. Long* wrote Kendall a letter in which she said:

"I got your letter of the 26th this morning. . . . I got one also from *Cram.*  I think he is trying to scare somebody. Well, my daughter is getting her back up.  She says no power under the sky can compel her to give a deed unless she chooses. . . . He also says he has seen my letter authorizing you to sell the place and that you are my attorney.  Well, I never knew you was, and if he ever saw such a letter I never wrote it.  You say I can have all rent collected until the first of May.  If there is no tenants in the house that would be nothing at all."

On February 7th Kendall wrote *Mrs. Long* a letter in which he said:

"Your favor in regard to selling your property, saying that your daughter refused to sign a deed.  Now I find that *Mr. Cram* was really wanting it for Mrs. Field, and she wants it for herself, and is willing to take it at what you have told

me that you would take for it. She has parted with Mr. Field and has the money to pay for it. . . . Now if you and daughter will make Mrs. Field a deed you can have your money."

The next letter of any consequence is one from *Mrs. Long* to Kendall under date of April 21, 1906, in which she says:

"You asked me what we intend to do about selling the place. You and Mrs. Field must be sick if you think we will take $3,500 when we have been offered more, but not enough to let it go."

On June 14th *Cram* wrote *Mrs. Long* to the effect that he had made a tender of the balance of the purchase price to Kendall and that the amount so tendered was deposited in the bank. He made a demand for a deed.

The circuit court found that Kendall was not authorized by the *Longs* to make the contract of sale of the property to *Cram* that was entered into, and that the contract was never ratified. As a conclusion of law the court found that the defendants were entitled to judgment dismissing the complaint. From a judgment entered in accordance with these findings and the conclusion of law therein plaintiff appeals.

For the appellant there was a brief by *Whitehead & Matheson,* and oral argument by *A. E. Matheson.*

For the respondents there was a brief by *Adams & Edgar* and *Joel B. Dow,* and oral argument by *H. W. Adams.* They cited, *inter alia,* 31 Cyc. 1361; *Abrahams v. Weiller,* 87 Ill. 179; *Higinbotham v. Pauch,* 232 Pa. St. 620, 81 Atl. 718; *Bosseau v. O'Brien,* 4 Biss. 395; *Gilbert v. Baxter,* 71 Iowa, 327, 32 N. W. 364; *Prentiss v. Nelson,* 69 Minn. 496, 72 N. W. 831; *Grant v. Ede,* 85 Cal. 418, 24 Pac. 890; *Furst v. Tweed,* 93 Iowa, 300, 61 N. W. 857; *Wasweyler v. Martin,* 78 Wis. 59, 46 N. W. 890; *Kirwan v. Byrne,* 9 Misc. 76, 29 N. Y. Supp. 287; *James v. Darby,* 100 Fed. 224; *Russell v. Falls Mfg. Co.* 106 Wis. 329, 82 N. W. 134; *Frahm v. Metcalf,* 75 Neb. 241, 106 N. W. 227; *Sands & M.*

*L. Co. v. Crosby,* 74 Mich. 313, 41 N. W. 899; *Clark v. Burr,* 85 Wis. 649, 55 N. W. 401; *Batie v. Allison,* 77 Iowa, 313, 42 N. W. 306; *De Jonge v. Hunt,* 103 Mich. 94, 61 N. W. 341; *Hinish v. Oliver,* 66 Kan. 282, 71 Pac. 520; *Egger v. Nesbit,* 122 Mo. 667, 27 S. W. 385; *Baker v. Holt,* 56 Wis. 100, 14 N. W. 8; *Northwestern I. Co. v. Meade,* 21 Wis. 474; *Richards T. Co. v. Beach,* 17 S. Dak. 432, 97 N. W. 358; *Stearns v. Clapp,* 16 S. Dak. 558, 94 N. W. 430; *Johnson v. Fecht,* 185 Mo. 335, 83 S. W. 1077; *Pond-Decker L. Co. v. Wilson,* 71 Ark. 644, 74 S. W. 295.

BARNES, J. The appellant concedes that the authority conferred on Kendall to collect rents and look after the property generally did not confer any power to make a sale of it, and that such power, if it existed, was conferred by the letter of October 10, 1905, and letters written thereafter. The appellant further concedes that no authority was conferred on Kendall to dispose of the interest of *Mrs. Long's* daughter, and that therefore specific performance cannot be enforced at least against her. However, the contention is made that *Mrs. Long* authorized. Kendall to make the contract of sale which he did make, and that whether this be true or not she subsequently ratified the contract; that the action for specific performance was brought in good faith, and that all the facts in reference to the transaction are before the court; and that, the specific relief prayed for being impracticable, the court should award a judgment for money damages to the plaintiff and against *Mrs. Long.*

There is practically no dispute in the evidence, and the first important inquiry is: Was the trial court warranted in drawing the inferences which it did from the testimony? An affirmative answer to this question disposes of the case.

*Mrs. Long's* letter of October 10th was written in reply to a letter which she received from Mr. Kendall. His letter

might serve to elucidate the meaning of hers, but it is not in evidence. Her letter of January 20th to *Cram* may refer to this letter of Kendall's or it may refer to one subsequently written. In it she says: "Last letter he [Kendall] said that a party wanted to know what I would take for the place." The letter of October 10th contains this bare statement: "As to selling the place, I would let it go for $3,500." Obviously this letter conferred no authority on the agent to enter into a written contract for the sale of the property, much less the elaborate contract that was made in this case. *Bosseau v. O'Brien,* 4 Biss. 395; *Gilbert v. Baxter,* 71 Iowa, 327, 32 N. W. 364; *Prentiss v. Nelson,* 69 Minn. 496, 72 N. W. 831; *Grant v. Ede,* 85 Cal. 418, 24 Pac. 890; *Furst v. Tweed,* 93 Iowa, 300, 61 N. W. 857. Neither do we think that the letter authorized Mr. Kendall to act as *Mrs. Long's* agent to secure a purchaser for the property and to charge her a commission for so doing. Apparently the suggestion about selling came from him and she made an offer to sell the property for a specific sum. If there was an unqualified acceptance of the offer in writing and the proper tender was made and *Mrs. Long* owned the premises, the offer and acceptance might well make a binding contract which would support an action for specific performance. But *Mrs. Long* would not be liable for any commission on the sale so made. The written contract entered into by *Cram* and Kendall on December 26, 1905, was not an unqualified acceptance of *Mrs. Long's* offer. It recited that $50 on the purchase price was paid to Kendall and that the remaining $3,450 was to be paid to *him* when a warranty deed and an abstract showing "a perfect title of record" was delivered to the purchaser. Whether a demand for such an abstract could be coupled with an acceptance of her offer to sell may be doubted. It would be incumbent on *Mrs. Long* to convey good title. She might have a perfect title by adverse possession although she had

no title of record whatever.   It cannot be doubted that a payment of a part of the purchase price to Kendall and an agreement to pay him the balance of it was not an acceptance of the offer made.   It was the defendant's legal right to have the money paid to herself and at her place of abode.   *Northwestern I. Co. v. Meade,* 21 Wis. 474.   So we think the trial judge was correct in holding that Kendall was not authorized to enter into the land contract.

This leaves for consideration the question of ratification and also the question of a subsequent offer and an acceptance thereof.

We do not think there is any evidence to show a ratification of the contract made by Kendall.   *Mrs. Long's* letter of December 31st was written before she knew the contract of sale was made.   It was hardly an unqualified offer to sell.   It said: "We have been trying to come to some decision about selling the place. . . . My daughter thinks we ought to get $3,500, but I think we might take say $3,400.   If he would pay you the commissions and leave me the rent until May."   The last two sentences quoted were evidently intended for one.   If the letter is an offer to sell, it is an offer to sell for $3,400, the purchaser to pay commissions and to allow *Mrs. Long* the rents to May 1st.   It is a different proposition from that first made and one which *Mrs. Long* had the right to make if there had been no legal acceptance of the first offer.

The letter of January 14th was written after *Mrs. Long* had been advised of the making of the contract.   She explains her letter of October 10th by saying that when she said she would take $3,500 she meant this sum above all expenses.   She then says if they will *"send"* a check for this amount and give her the rent to May 1st, she will convey.   This was clearly a modification of the offer of October 10th, but one made at a time when she had the right to change her offer.   It was not a ratification of the contract made by Kendall, be-

cause it required the payment of an additional consideration by way of rent, if for no other reason. In none of her letters did *Mrs. Long* agree to abide by the terms of the contract made by Kendall. She very adroitly avoided doing so. The plaintiff might have made a binding contract with *Mrs. Long* by making an unqualified acceptance of the conditions named in her letter of January 14th and by promptly performing his part of the agreement. He did neither. Under date of January 17th the agent refused in effect to comply with these terms. *Cram* in his letter of January 16th stood squarely on his written contract and stood on it as written. On January 24th *Mrs. Long* made still another offer to convey, the conditions being substantially the same as those contained in her letter of January 14th. The plaintiff did not accept this offer, although he came nearer to it than he did to any of her former offers. The trouble was that, instead of unqualifiedly accepting the offer made, he in effect made a counter proposition by changing one of the conditions of the offer of sale. She had not agreed to furnish an abstract. She had insisted that the money be sent her at Glens Falls and that she would then make a deed. Instead of consenting to tender the money and receive the deed there, the purchaser insisted that the deed and abstract be sent to Beloit for delivery on payment of the purchase price. This court has repeatedly held that the purchaser has not the right to change the place of payment where he attempts to accept an offer, and that an acceptance of this kind is not an unqualified one such as is necessary to make a binding contract to sell real estate by letter. *Northwestern I. Co. v. Meade,* 21 Wis. 474; *Baker v. Holt,* 56 Wis. 100, 14 N. W. 8; and *Curtis L. & L. Co. v. Interior L. Co.* 137 Wis. 341, 345, 118 N. W. 853. Kendall's letter of January 29th likewise falls short of being an unqualified acceptance. *Mrs. Long's* proposition was to make a deed after the money to pay for it was deposited.

Kendall's offer was to pay the money after the deed was executed and it was deposited together with an abstract of title. The difference was hardly worth disagreeing about, but *Mrs. Long* evidently did not want to go to the expense and trouble of making out a deed and procuring an abstract until she knew that the money was within her reach, and she had the right to make this condition if she saw fit. There was no further correspondence which is material. A tender was subsequently made on May 29th. It was made to the agent, Kendall, on the theory that the written contract of sale was binding on *Mrs. Long,* and it was made after she had advised the parties that she would not sell. She had the right to withdraw the offer before there was an acceptance of it. *Hopkins v. Racine M. & W. I. Co.* 137 Wis. 583, 119 N. W. 301; *Johnson v. Filkington,* 39 Wis. 62.

*By the Court.*—Judgment affirmed.