FRANCIS GORDON BROWN, Respondent, v. F. O. NORTON, Appellant.

*Executory contract of sale by letters — when held to create a binding contract — no action will lie on a contract to deliver a specific quantity of property until the whole is delivered.*

In an action, brought to recover for the price of 10,000 blue Welsh fire brick, with interest thereon, it appeared that the contract was made by correspondence, the proposal to purchase the brick being made by the defendant in a letter, dated February 20, 1886, addressed to S. L. Merchant & Co., the plaintiff's assignor, stating, "I will take ten thousand blue Welsh fire brick, at twenty-four dollars per one thousand, upon the opening of navigation on the Hudson. Let me know my order is accepted and oblige." To which Merchant & Co. replied, by a letter of February twenty-third, "We are much obliged for your order of February twentieth for ten thousand blue Welsh fire brick, at twenty-four dollars per thousand, on dock at New York city, upon opening of navigation. We will execute the order," and, added to this reply, an inquiry when navigation opened on the Rondout canal; to which the defendant replied, "Would say that the Rondout canal will open on or about the first of April."

The defendant contended that the statement in the reply of Merchant & Co., to his proposal that the brick should be delivered on the dock in New York city, created a different proposal, instead of an unqualified acceptance of that made by him, and required acceptance by him to make it a binding contract. .

*Held*, that, as these parties were engaged in the business, and understood the source from which the brick would be obtained, it was to be inferred that they knew they would be unladen upon the dock in the city of New York, in per-

formance of the proposal made by the defendant, even if no reference had been made to that effect by the answer of Merchant & Co.; and that the reply of the defendant to the answer of Merchant & Co. also inferentially disclosed that to have been his understanding of the proposal which was made.

That this correspondence was such as to create a binding contract on the part of the defendant to receive and pay for the brick on their arrival at the port of New York, and their delivery upon the wharf on the opening of navigation on the Hudson.

After the arrival of the steamer and the unlading of the brick upon the wharf notice was given by Merchant to the defendant of their arrival, as being 10,000 brick, and he was requested to look after them. He having failed to do so the brick, after remaining upon the wharf for five or six days, were placed in a warehouse, subject to the storage of forty cents a hundred per month. At the time when the brick were unladen upon the wharf they were fourteen in number short of the contract quantity; and in the warehouse receipt, which was given on the sixth of April, when they were taken in store, it is stated that about 100 of the bricks were broken. When these bricks were broken does not appear otherwise than by inference from the evidence,

*Held,* that, as under the contract, the brick were to be imported by Merchant & Co., they were at their risk until their delivery to the defendant upon the wharf; and as these bricks were broken either when they were laden upon the steamer, or during their carriage or in the process of unlading them, that risk and loss was upon Merchant & Co. and not upon the defendant.

That, as they were short in number and broken in this manner, the defendant was not obliged to accept them, and that this action for the recovery of the purchase-price of the brick could not be maintained.

A delivery order was obtained for the brick, which was stated to have been indorsed and sent to the defendant when the goods were entered at the custom-house,

*Held,* that, as the order, with a bill, which had been rendered for this brick, dated April first, was returned soon after that date to Merchant, there was no acceptance of the brick, as there might have been, if the order had been retained by the defendant.

APPEAL from a judgment entered in the office of the clerk of the city and county of New York on March 28, 1888, upon a verdict rendered for the plaintiff.

*W. B. Winterton,* for the appellant.

*F. S. Bangs,* for the respondent.

DANIELS, J.:

The verdict was recovered for the price of 10,000 blue Welsh fire brick with interest thereon. The brick were imported from Liverpool by S. L. Merchant & Co., under an order given to them

for that purpose by the defendant, in February, 1886. There was but 9,986 of the brick laden upon the steamer, and after her arrival and the unloading of the brick upon the wharf notice was given by Merchant to the defendant of their arrival, as being 10,000 brick, and he was requested to look after them. He failed to do so at that time on account of his boat not being in a condition to receive them, and after they remained upon the wharf for five or six days they were placed in a warehouse subject to the storage of forty cents a hundred per month. After that the defendant proposed to receive the brick, but finding them stored in this manner he refused to do so. Merchant & Co. afterwards assigned and transferred their claim for the price of the brick to the plaintiff in this action. The defendant resisted the right of the plaintiff to maintain the action upon the ground that no binding contract for the purchase of the brick had been entered into between himself and Merchant & Co. The contract, so far as it was entered into, was made by correspondence. The proposal to purchase the brick originated with the defendant, and it was in these words:

"NEW YORK, *Feb.* 20, 1886.

" Messrs. S. L. MERCHANT & Co., 25 *State St. :*

" GENTLEMEN. — I will take 10 M blue Welsh fire brick at $24 per thousand upon the opening of navigation on the Hudson. Let me know if my order is accepted, and oblige,

" Yours, etc.,

" F. O. NORTON, P."

To that Merchant & Co. replied in the following manner:

"NEW YORK, 2, 23d, 1886.

"F. O. NORTON, 92 *B'way, City :*

" DEAR SIR. — We are much obliged for your order of Feb. 20th for 10,000 blue Welsh fire brick at $24 per thousand on dock at New York city upon opening of navigation. We will execute the order.

" Yours truly,

" S. L. MERCHANT & CO., K."

And added to this reply, in the form of a postscript, the inquiry when navigation opened on the Rondout canal; and to that Norton sent this reply:

"New York, 24th Feb., 1886.

" S. L. Merchant & Co., 25 State St., City :

" Gentlemen. — In reply to your letter of 23d inst., would say that the Rondout canal will be open on or about the 1st of April.

" Yours truly,

"F. O. NORTON."

The objection to this correspondence as a contract is placed upon the statement, in the reply of Merchant & Co. to the defendant's proposal, that the brick should be delivered on the dock in New York city. That delivery was not, in words, made a part of the defendant's offer ; and, for that reason, it has been urged that their addition created a different proposal instead of an unqualified acceptance of that made by the defendant, and, therefore, required acceptance by him to make it a binding contract. But it is to be inferred, as these parties were engaged in the business, and understood the source from which the brick would be obtained, that they would be unladen upon a dock in the city of New York, in performance of the proposal made by the defendant, even if no reference had been made to that fact by the answer of Merchant & Co. The brick, under the proposal, were to be delivered upon the opening of navigation on the Hudson, and that delivery, without anything more being said upon the fact, would be made, in the natural and ordinary course of business, upon a dock on the Hudson river. And such is the rule which has been followed by the courts concerning the delivery of goods to arrive from abroad. (Angell on Carriers [5th ed.], 309–312.) The reply of the defendant to the answer of Merchant & Co. also inferentially discloses that to have been his understanding of the proposal which was made, for that reply was written and sent upon the evident conclusion that the brick, under the agreement as it was proposed by him, were to be delivered on a dock at New York city. For if that had not been his understanding of his own proposal, something more would have been added to his reply on this subject expressive of his dissent from this landing. But, so far from doing that, his final reply simply answered the question concerning the opening of navigation, in language appearing to assume that he was to receive the brick under his proposal, in the manner mentioned in the answer of Merchant & Co.

There is no doubt as to the rule requiring the answer to be as specific as the proposal, to create a contract where it is proposed to make it by correspondence. This rule is fully and clearly maintained by the authorities. (*Myers* v. *Smith*, 48 Barb., 614; 1 Parsons on Contracts [6th ed.] 475, 476; *Uhlman* v. *Day*, 38 Hun, 298; *Ashcroft* v. *Butterworth*, 136 Mass., 511; *Stagg* v. *Compton*, 81 Ind., 171; *Barker* v. *Holt*, 56 Wis., 100; *Derrick* v. *Monette*, 73 Ala., 75.) And the correspondence, to satisfy the statute of frauds, where the case is within it, as this case surely was, must include and embody all the substantial attributes of the agreement. (*Dickinson* v. *Rawson*, 12 Weekly Dig., 563.)

This correspondence was such as to comply with these rules, and, therefore, to create a binding contract on the part of the defendant to receive and pay for the brick on their arrival at the port of New York, and their delivery upon the wharf on the opening of navigation on the Hudson; and it appeared, as a fact, that this navigation was open on the thirty-first of March, when the brick arrived, and that the time had also arrived when the defendant himself declared that navigation would be opened on the Rondout canal, through which it was probably designed by him to take these brick. But, as the defendant refused to accept or receive the brick which were offered, the point is presented whether they were in the condition which the contract required them to be in to subject him to the obligation of receiving and taking the brick, and paying the price for them. At the time when the brick were unladen upon the wharf they were fourteen in number short of the contract quantity, and in the warehouse receipt, which was given on the sixth of April, when they were taken in store, it is stated that about one hundred of the brick were broken. When these brick were broken in this manner does not appear otherwise than by inference from the evidence. They do not seem to have been handled, or moved in any manner, after they were unladen from the steamer on the wharf until they were taken into the warehouse; and there is ground, therefore, for inferring, either that the brick were broken when they were laden on the steamer or in her transit across the ocean, or in their delivery from the steamer on the wharf. No intervening circumstance appears to have arisen which would account for the breaking of the brick in any other way, and they are stated to have been in this

condition at the time when they were received in store. Under the contract, as the brick were to be imported by Merchant & Co., they were at their risk until their delivery to the defendant upon the wharf ; and, as these brick were broken either when they were laden upon the steamer or during their carriage, or in the process of unlading them, that risk and loss was upon Merchant & Co., and not upon the defendant. That they were short in number and broken in this manner appeared by the plaintiff's evidence upon the trial, and this fact was made a ground for the support of a motion to dismiss the complaint at the close of the plaintiff's evidence. If the brick in this condition had been accepted and received by the defendant, the contract might be held to be so far performed as to subject him to liability for the price, less the reduced value of the broken brick and the value of those not delivered at all, for the case then would present the fact of a substantial performance of the agreement, which would render the defendant liable to this extent. (*Clapp* v. *Thayer*, 112 Mass., 296 ; *Dauchey* v. *Drake*, 85 N. Y., 407, 411.) But the fact which was essential to bring this case within that rule did not exist, for the defendant at no time accepted or received the brick, or any portion of them. A delivery order was obtained for the brick, which is stated to have been indorsed and sent to the defendant when the goods were entered at the custom-house ; but this delivery order was not retained by the defendant, but it was returned to the witness, Merchant, without any explanation or statement whatever with the bill which had been rendered for the brick. This bill is dated on the 1st of April, 1886, and the import of the evidence is that with the order it was returned soon after that date, and not later than April fifteenth, to Merchant. There was, therefore, no acceptance of the brick through the medium of this transaction, as there might have been if the order had been retained by the defendant. (*Hayden* v. *Demets*, 53 N. Y., 426.)

As the case stood upon the proof, therefore the question arises whether the defendant was so placed in default by his refusal to receive and accept the brick as to render him liable for the purchase-price. The contract, it is to be remembered, was wholly executory between himself and Merchant & Co., and it was for them, under the law, to perform it according to its terms before the defendant

could be made liable to pay the purchase-price of the brick. (2 Parsons on Contracts [6th ed.] 656. They did not so perform it, for the brick were not only deficient in quantity, but about one hundred of them appear to have been broken, and it was in this condition that they were tendered and offered to the defendant; and they continued to be in the same condition when he returned the delivery order, thereby refusing to receive the brick. What the law requires to render it obligatory upon a purchaser to receive property under a contracts of sale is that the property itself, both in quantity and quality, shall conform to the agreement for its purchase. If it is deficient in either respect, the purchaser may refuse to receive or accept it, and in that manner avoid liability for the payment of the purchase-price. This principle applies especially to executory contracts which the party may refuse to perform because of the property being deficient in quantity or quality; and in this class of cases the rule has been stated to be that, "if the contract was entire, the plaintiffs were not entitled to recover (no part having been accepted) without a delivery, or an offer to deliver, all the articles contracted for in the condition required by the contract." (*Husted* v. *Craig*, 36 N. Y., 221, 223.) The rule was also stated in nearly the same words by Church, Ch. J., in *Kein* v. *Tupper* (52 N. Y., 550), where it was said to be "well settled in this State that upon a contract for the delivery of a specific quantity of property, payment to be made on delivery, no action will lie until the whole is delivered." (Id., 555.) This results from the construction and effect of the language employed by the parties in making and entering into their agreement. And where they have agreed on the one side to deliver a specific quantity and description, or quality, and to accept it on the other, and then only to pay the purchase-price, the offer or tender of the property in the condition required by the agreement is a condition precedent to the creation of the liability. The rule upon that subject is that "whenever a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." (*Oakley* v. *Morton*, 1 Kernan, 25, 30, 31; *Baker* v. *Higgins*, 21 N. Y., 397; *Hill* v. *Heller*, 27 Hun, 416.)

Upon this subject it has been correctly said that " courts have no

dispensing power to absolve men from their legal engagements, nor can they make contracts for them. The delivery * * * was a condition precedent to the payment of the price, and the plaintiff must first perform on his part before he has any ground of complaint against the defendant." (*Mead* v. *Degolyer*, 16 Wend., 632.) A strict compliance with this rule has only been dispensed with in cases where a defective performance, not in an essential particular, has been accepted or received by the party proceeded against. (*Brown* v. *Weber*, 38 N. Y., 187.) And as no such performance took place in this instance, the principle, in its fully and unqualified force, is applicable to the disposition of this controversy.

The defendant contended at the trial, and his own evidence had a tendency to prove, the correctness of his position, that further time had been given to him in which he could accept and receive the brick. But this was contradicted by Mr. Merchant, and the jury found the fact not to have been as the defendant stated it. There was, accordingly, no waiver whatever of his right to insist upon a complete performance of the agreement, both as to quantity and quality of the brick; and when it appeared, as it did by the plaintiff's evidence, that Merchant & Co. had not been in a condition to perform the agreement upon their part, the conclusion legally followed that the defendant never became liable for the payment of the purchase-price of the brick. There had been no waiver whatever of his right to insist upon a complete performance of the agreement; and when it appeared that Merchant & Co. could not perform it, and did not purpose to perform it as it had been made, they failed to maintain their action for the recovery of the purchase-price, for at least a tender of the property, as it was described in the contract, or an offer to deliver it to the defendant, was a necessary fact to entitle them to the payment of the purchase-price. No such tender was or could be made of the brick, and the defendant consequently was entitled, upon his motion, to a dismissal of the complaint.

The judgment should be reversed and a new trial ordered, with costs to the defendant to abide event.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to defendant to abide event.