A. H. BENNETT, *Doing Business as the Bennett Commission Company,* v. M. T. CUMMINGS.

No. 14,597.    (85 Pac. 755.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Purchase and Sale.* Where one dealer solicits another to make an offer to buy certain produce, the latter wires such an offer, giving terms in full, and the former sends an answer in the form of a statement that he will sell the produce mentioned, repeating the very terms of the offer, a contract of purchase and sale is thereby effected.

2. ———— *Terms as to Time of Delivery — Acquiescence.* In such a case, where a time of delivery is mentioned in the request for an offer, a shorter time is named in the offer, and the final telegram is silent on the subject, circumstances may justify treating such silence as an acquiescence by the seller in the time proposed by the buyer; and *held,* that such circumstances exist in the present case.

3. ———— *Acceptance — Condition that the Law Would Imply.* Where the acceptance of an offer is otherwise sufficient it is not rendered ineffective by the addition of words which do no more than state a condition which the law would imply in any event.

Error from Marshall district court; SAM KIMBLE, judge. Opinion filed May 12, 1906. Reversed.

*M. M. Miller,* and *W. S. Glass,* for plaintiff in error; *Eugene S. Quinton,* of counsel.

*L. M. Pemberton,* for defendant in error.

The opinion of the court was delivered by

MASON, J.:    A. H. Bennett, of Topeka, who does business under the name of the Bennett Commission Company, brought an action against M. T. Cummings, of Beatrice, Neb., to recover damages for the failure of the latter to comply with a contract for the sale to the former of a quantity of corn. Upon the trial the defendant objected to the introduction of any evidence under the petition for the reason that it failed to state

facts sufficient to constitute a cause of action. The court sustained the objection and rendered judgment, which the plaintiff now seeks to reverse.

The negotiations between the parties which the plaintiff claims culminated in a contract were conducted by the interchange of telegrams and letters while one was in Topeka and the other in Beatrice. The contention of the defendant is that this correspondence consisted merely of a series of propositions and counter-propositions, and never resulted in a definite offer and acceptance; that the minds of the parties never met upon all the essential elements involved, and consequently no contract was ever entered into; and that all of the communications having any color of acceptance were qualified by new conditions which prevented them from being such in fact. Whether this contention is sound is the sole matter to be here determined. The disputed questions of law might perhaps be adequately presented by means of an abridgment of the correspondence referred to; but in order that every detail of the controversy may be exhibited it is deemed expedient to show in full all communications that passed between the parties, as alleged in the petition. They were as follow:

1.—Telegram.

"BEATRICE, NEB., May 18, 1903.
*"Bennett Commission Company, Topeka, Kan.:*
"Give me best bid 10,000 No. 3 white corn or better, same No. 3 mixed corn or better, to be delivered to Union Pacific railway at Beatrice within fifteen days.
M. T. CUMMINGS."

2.—Telegram.

"TOPEKA, KAN., May 18, 1903.
*"M. T. Cummings, Beatrice, Neb.:*
"Will pay forty-one cents per bushel for 5000 bushels No. 3 or better mixed corn at Kansas City, and will pay forty-two cents per bushel for 5000 bushels No. 3 or better white corn at Kansas City. Reply instantly; one week for shipment.
BENNETT COMMISSION COMPANY."

3.—Telegram.

"BEATRICE, NEB., May 18.

*"Bennett Commission Company, Topeka, Kan.:*

"Will sell you 5000 bushels No. 3 or better mixed corn on track at Kansas City at forty-one cents per bushel, and 5000 bushels of No. 3 or better white corn on track at Kansas City at forty-two cents per bushel. Terms good firms.                    M. T. CUMMINGS."

4.

"M. T. CUMMINGS, Grain.

"BEATRICE, NEB., May 18, 1903.

*"Bennett Commission Company, Topeka, Kan.:*

"DEAR SIRS—I hoped in the attached message to interest you in my desire to sell 10,000 bushels each of white and mixed corn on the Union Pacific. Am shelling from my own cribs here. I would not want to sell for inspection beyond Kansas City, and yet we think that if any corn is safe to ship further south this corn would be. I have quite a line of it left, and if you are strong in the market should like to have your bids from time to time.                    Yours truly,

M. T. CUMMINGS."

5.

"M. T. CUMMINGS, Grain.

"BEATRICE, NEB., May 18, 1903.

*"Bennett Commission Company, Topeka, Kan.:*

"DEAR SIRS—This will confirm sale to you of 5000 bushels 3 or better mixed and 5000 bushels 3 or better white corn at forty-one and forty-two cents, respectively, track Kansas City. Am hoping this will turn out to be Topeka terms. We are not partial to Kansas City and would it to be good firms, if that destination, which your message seems to indicate. In any event would not want terms south of Kansas City. Have had all the grief I can stand for this season. This, however, will be corn from my cribs, and if any corn is safe to send south without kiln-drying I think this would be. I do not care to dabble in that market at my own risk, however—never again, forever.

Yours truly,       M. T. CUMMINGS.

"Am trying to get shelling started tomorrow, and think can get it forward within the week's time.— M. T. C."

6.—Confirmation of purchase.

"THE BENNETT COMMISSION COMPANY.

"TOPEKA, KAN., Sta. A., May 18, 1903.
"*M. T. Cummings, Beatrice, Neb.:*
"DEAR SIR—This confirms our purchase from you to-day, per wire, of 5000 bushels of 3 or better white corn at forty-two cents, track Kansas City, subject to Kansas inspection, destination weights, to be shipped from Beatrice, Neb., in seven days *via* Union Pacific railway, and billed to us at Topeka, Kan.

Yours very respectfully,
THE BENNETT COMMISSION COMPANY.
By F. H. B."

7.—Confirmation of purchase.

"THE BENNETT COMMISSION COMPANY.

"TOPEKA, KAN., Sta. A, May 18, 1903.
"*M. T. Cummings, Beatrice, Neb.:*
"DEAR SIR—This confirms our purchase from you to-day, per wire, of 5000 bushels of 3 or better mixed corn at forty-one cents, track Kansas City, subject to Kansas inspection, destination weights, to be shipped from Beatrice, Neb., in seven days *via* Union Pacific railway, and billed to us at Topeka, Kan.

Yours very respectfully,
THE BENNETT COMMISSION COMPANY.
By F. H. B."

8.

"M. T. CUMMINGS, Grain.

"BEATRICE, NEB., May 19, 1903.
"*Bennett Commission Company, Topeka, Kan.:*
"DEAR SIRS—I have your favor of the 18th with confirmations, which I note read Kansas City grades, 'destination weights.' Please advise where and by whom this grain is supposed to be weighed. In selling to local trade beyond Kansas City and outside Memphis I have been getting settlement on my own weights, and other terms would not look attractive nor satisfactory. Even Memphis weights would carry with them some proviso as to who the weighing firms should be.          Yours truly,     M. T. CUMMINGS.

"Are you not fixed to give me Topeka terms on this stuff?—M. T. C."

9.

"TOPEKA, KAN., May 20, 1903.
*"M. T. Cummings, Beatrice, Neb.:*
   "DEAR SIR—Acknowledging your two favors of the 19th, allow us to say that as our confirmation shows we expect to give you Kansas state inspection, and will add that we also expect to give you Topeka weights. We have no intention of asking you to accept destination weights at a little interior point where weighing is not reliable.            Yours truly,
            THE BENNETT COMMISSION COMPANY."

10.

"TOPEKA, KAN., May 23, 1903.
*"M. T. Cummings, Beatrice, Neb.:*
   "DEAR SIR—The party to whom we sold corn bought from you is already beginning to make inquiries as to its arrival, and we presume that it will be imperative that all bills of lading and weigh bills be dated within the time limit of the contract in order to have the grain applied thereon.   Please hurry this matter up as rapidly as you can.            Yours truly,
            THE BENNETT COMMISSION COMPANY."

11.

"M. T. CUMMINGS, Grain.
            "BEATRICE, NEB., May 25, 1903.
*"Bennett Commission Company, Topeka, Kan.:*
   "DEAR SIRS—I note your letter of the 23d.   Also that to-day is last day of our trade.   I shall be down the road to-day and if I can get anything forward will do so, but the heavy rains have probably put us clear out this time.   Yours truly,   M. T. CUMMINGS."

The plaintiff maintains that the three telegrams resulted in a complete contract, which was confirmed by the subsequent letters, and was never abrogated. The defendant insists that the third telegram was not the acceptance of the offer made in the second one, but was merely the submission of an independent proposition which the plaintiff might accept or reject. The connection between the telegrams, however, is too obvious and too intimate to be ignored. The seller wires to the buyer asking for an offer. The offer is made. The seller then replies, but instead of referring in terms

to the message he has received and either accepting it or proposing a modification, he states in detail what he is willing to do. Under the circumstances stated, if the essential features of the trade indicated in the last telegram are identical with those of the one preceding it, it is in effect an acceptance of it, and requires no answer in order to complete the contract. The two telegrams correspond exactly except that in the last there is no reference to the time of delivery, and the words "terms good firms" are added.

The matter of time is of course important, and unless it was agreed upon there could have been no meeting of the minds of the parties. The first telegram sent by Cummings solicited an offer and referred expressly to the time of shipment, placing it within fifteen days. In response to this Bennett submitted an offer reducing the time to one week, and asking an immediate reply. An answer was at once made which restated the other terms of the sale, but was silent as to the time. The consideration of time cannot be thought to have been overlooked. That it was given attention by both parties is manifest from the first two telegrams. And in view of this fact it cannot be supposed that Cummings when he sent his last dispatch intended to leave the time of delivery open. He must be deemed either to have stood upon his own first proposal in that regard or to have acquiesced in the modification made by Bennett. Inasmuch as Bennett in his offer distinctly placed the time of shipment at one week, and asked an immediate reply, and as an immediate reply came which was absolutely silent as to this feature of the case, we decide that such silence under the circumstances is fairly to be interpreted as an acceptance of the conditions imposed in this respect by Bennett. That it was so intended by Cummings is apparent from the fact that in his letter following his second telegram and written on the same day (communication No. 5) he undertook to confirm,

not merely an unaccepted offer on his part to sell, but an actual sale of the corn described, and added that he thought he could get it forward "within the week's time," reference obviously being had to the time proposed by Bennett and accepted by him.

If the words "terms good firms" added to the second telegram sent by Cummings imported a new condition they of course prevented its operating as an acceptance of Bennett's proposal.   However blind the expression may seem in itself, it is not difficult to attach a meaning to it when it is read in the light of the whole correspondence.   It clearly meant that the corn was to be weighed at its destination by responsible business men —that Cummings did not bind himself to accept weights made by unreliable people.   In the absence of a special agreement there was no obligation on his part to do so.   The words used did not affect the contract between the parties.   The situation was the same as though Cummings had said: "I reserve the right to insist upon honest weights."   The mere declaration of a matter which the law clearly implied was not the addition of a new term.

Since we hold that a complete agreement for the sale and purchase of the corn resulted from the interchange of the communications thus far specifically mentioned, it is unnecessary to discuss the remainder of the correspondence further than to say that at no stage of the negotiations could it be contended with any plausibility that Bennett had abandoned the contract or otherwise forfeited his right to demand its performance.   Indeed, no serious differences appear to have arisen between the parties.   Their subsequent letters have the color of discussions relating to the interpretation to be placed upon a contract already entered into, or to concessions that might be made as a matter of grace upon one side or the other.   If there were any misconceptions upon either side, or upon both, of the effect of the contract, or if by common consent its terms were

modified, neither fact is now important. We are concerned here only with the inquiry whether the petition stated a cause of action—that is, whether the correspondence it sets out shows a completed agreement. This question being answered in the affirmative, it results that the judgment must be reversed, and the cause remanded for further proceedings.

All the Justices concurring.