### 6191. NUTTING & COMPANY *v.* KENNEDY.

1. Generally a real-estate broker's commission is earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner (Civil Code, § 3587); but when an agreement to pay a definite amount as commission is included in a preliminary contract of sale between the owner and the proposed purchaser, by the terms of which a commission "for making the trade" is to be paid only in the event "it is closed," a verdict in favor of the broker suing for such commission is not demanded, when there is evidence that the would-be purchaser declined to complete the sale, upon the ground that she had been advised that the title to the real estate in question was defective.

2. The court did not err in admitting evidence illustrative of the meaning of the phrase "it is closed," in the contract, as it was understood by the parties at the time of entering into the agreement.

3. The plaintiffs' right to recover a commission as real-estate brokers being wholly dependent upon their relation as agents of the vendor, it was immaterial that the agreement to pay a commission was incorporated in the anticipatory contract between vendor and purchaser, rather than in a separate instrument, or that it may have rested in parol.

4. The evidence authorized the verdict, and there was no error in refusing a new trial.

DECIDED JULY 2, 1915.

Attachment; from municipal court of Atlanta. November 19, 1914.

*Simmons & Simmons,* for plaintiffs.

*John W. Crenshaw,* for defendant.

RUSSELL, C. J. Nutting & Company, real-estate agents, sued Mrs. Jane Kennedy in the municipal court of Atlanta for the recovery of $75 as commission for the sale of certain real estate. The plaintiffs alleged that the defendant, through her attorney in fact, authorized them to negotiate a sale for $1,500, and, in fixing the amount of commission at $75, relied on a custom in Atlanta under which 5 per cent. is paid brokers on the first $2,000 of the purchase-price of real estate. They alleged that after they had secured a purchaser, Mrs. Kennedy "failed to furnish to the purchaser a good and sufficient title to the property, and as a result the purchaser refused to buy the property." On the trial it appeared that T. Æ. Means was the attorney in fact for Mrs. Kennedy and was authorized to consummate a sale of the real estate in question, and that he was approached by a representative of the plaintiff firm, and signed the contract as attorney in fact for Mrs. Kennedy. It was signed also by Mrs. Bates, who was alleged to be the purchaser.

In the contract Mrs. Kennedy agreed to sell a certain house and lot for $1,500, and there were certain undertakings on her part in regard to cleaning the premises and as to repairs. Mrs. Bates, on her part, agreed to pay $250 as earnest money, $500 or more in cash, and to give a note for the balance due on or before two years after date, as soon as good and sufficient title was furnished her to the property. The contract contained also the following stipulation: "It is understood that vendor is to pay usual commission of $75.00 to J. R. Nutting & Co. for making this trade, if it is closed." It is undisputed in the evidence that Mr. Cook, as representative of the plaintiffs, proposed and presented to Professor Means the contract in question, and that the sale did not go through, because Mrs. Bates objected to the title, but it was not proved that the title was in fact defective, nor was it shown in what respect, if any, it was defective. The only evidence upon this point was that of Mrs. Bates, who testified that she "refused to carry out the trade, because the Title Guarantee Company said it was not perfect; it was faulty. He showed me wherein he thought it was defective. I refused to take it on his statement." This testimony was mere hearsay, and did not go to the point of proving that there was in fact any defect in the title, and for this reason a verdict for the plaintiff was not demanded by the evidence, even if the jury would have been authorized to find in favor of the plaintiff. It is true that generally a real-estate broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner. But in the present case, according to the plaintiff's own testimony, the right to a commission was dependent upon the contract of sale which the plaintiff tendered in evidence, and in which it was provided that the commission should not be due unless the trade was "*closed.*" In the absence of an express agreement to the contrary, if the owner of real estate who wishes to sell it and has placed it in the hands of a broker accepts a purchaser proposed by the broker, the vendor will, of course, become liable for the commission whether a sale results or not. In the present case, however, there is not only no evidence that the proposed purchaser was accepted by the defendant, but there is, on the contrary, an express stipulation that the commissions are payable only in the event that the trade "is closed." The evidence shows that the trade

was never closed, and the plaintiff entirely failed to show that the refusal of the proposed purchaser to take the lot was due to the fact that the title was bad. The mere expression of an opinion on the part of some one at the office of the Title Guarantee Company that the title was, in his opinion, defective, would not suffice, without a statement of the facts upon which that opinion was based, to show that the title was in fact defective, and that therefore Mrs. Bates had a good reason for declining to take the property. Furthermore, in the form in which the opinion was presented, it was mere hearsay, of no probative value, and properly disregarded by the jury. There was no error in the refusal of the trial judge to grant a new trial, and the appellate division of the municipal court correctly affirmed the judgment in favor of the defendant.

*Judgment affirmed.*