C. C. CALKINS, Appellant, v. ROBERT F. ALLEY, Appellee.

APPEAL AND ERROR: Review—Conflicting Testimony. A finding
1   of fact by the trial court in a law action on sharply conflicting testi-
    mony is final on appeal.

BROKERS: Commission—"When Deal Closed and Title Passed." A
2   broker who contracts for commission "due when deals are closed
    and title passed," earns such commission (no bad faith appearing)
    only when the contracts of sale are fully consummated by the pay-
    ment of the purchase price and the actual passing of title.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

FEBRUARY 16, 1921.

ACTION at law to recover certain commissions claimed to be
due plaintiff as the agent of defendant, and also to recover the
proceeds of certain land which plaintiff claims he had purchased
from defendant on written contract, and which defendant after-
wards sold to another. Trial to the court, without the interven-
tion of a jury. Judgment for plaintiff on certain of his claims,
and against him on others. Both parties appeal.—*Affirmed on
both appeals.*

*J. G. Myerly*, for appellant.

*Miller, Kelly, Shuttleworth & Seeburger*, for appellee.

FAVILLE, J.—I. Plaintiff is designated as "appellant,"
and defendant as "appellee;" but, for convenience, we shall
refer to them as "plaintiff" and "defendant." The plaintiff's
petition is in four divisions or counts, one of which contains
three different items upon which recovery is sought.

At the time of the transactions referred to, the plaintiff was
a resident of Dickinson County, Iowa, and the defendant was a
resident of Hale County, Texas. Plaintiff was a real estate
agent, and the defendant was engaged in the cattle business,

farming, and dealing in real estate in Texas. Defendant had made arrangements with one O'Donnell to procure prospective purchasers in Iowa for lands in Texas. O'Donnell appointed one Jackson as a subagent, and he solicited plaintiff as a prospective buyer. Thereafter, plaintiff had an interview with defendant and O'Donnell regarding the subject of his procuring purchasers and buying lands, and did procure a number of buyers, and became himself a purchaser of a section of land.

Plaintiff's chief contention is based upon the claim made in the fourth division of his petition. This claim is that, about February 17, 1916, he purchased from defendant a certain tract of 640 acres in Hale County, Texas, for the price of $35 per acre, and received a contract of sale therefor. He gave his notes for $7,500 as part of the purchase price. Plaintiff contends that, at defendant's request, he gave defendant permission to sell 320 acres of said land at $50 per acre, and that defendant sold the land for said sum. Plaintiff claims that he also gave defendant permission to sell the remaining 320 acres of said tract for $55 per acre, for which sum defendant sold the same.

Plaintiff seeks recovery of the amount for which the land was sold, less the payment of the $7,500 and the balance due from plaintiff to defendant under the contract of purchase. Defendant, by answer, admits the purchase of the 640 acres by plaintiff as alleged, but avers that nothing was ever paid thereon, and that the contract was canceled by agreement of the parties. Defendant also alleges that he tendered the abstracts of title to the land to the plaintiff, who refused to accept the same, and that, by the terms of the contract and the laws of Texas, the contract became forfeited. For reply, the plaintiff alleges that the defendant by his conduct waived the alleged forfeiture.

Such are the issues upon which this claim of plaintiff's was tried to the court. Plaintiff contends that the decision of the lower court is contrary to the great weight of the testimony, and asks a reversal.

The evidence shows that the parties entered into the contract by which the plaintiff purchased from the defendant 640 acres of land in Texas, and at said time gave the defendant two notes, for $2,500 and $5,000, respectively, as part payment of the purchase price. The evidence shows that thereafter the plain-

tiff procured purchasers for a portion of defendant's land in Texas, and earned commissions on various sales so made. The plaintiff contends that he should have had credit on the two notes above mentioned for these commissions in the amount of $1,760. It is his contention, and he introduced evidence to show, that an arrangement was made between him and the defendant, by which the defendant was to sell the land which the plaintiff had so purchased. Plaintiff claims that he consented to this resale by the defendant, and that he was entitled to the selling price, from which should be deducted the balance due on the notes given by him, less the commissions he has earned, and the remainder due from him on the purchase price under the original contract. The defendant, on the other hand, offered evidence to show that, after the contract of purchase was made by the plaintiff, he failed to carry out the terms of the contract of purchase, and that the defendant canceled the contract and surrendered to the plaintiff the two notes which had been given as evidence of part of the purchase price, and marked the same "Canceled." Defendant's testimony is to the effect that, while he thereafter sold the land in question to other parties, it was after the plaintiff's rights therein had terminated, and that the plaintiff had no interest in said land or in the proceeds of the sale.

There is no dispute between the parties in regard to the purchase of the property by the plaintiff, nor regarding the execution and delivery of the notes referred to. The real question on this branch of the case is a question of fact as to what the understanding and agreement were, between these parties, as to whether there was an abandonment, of the original contract of purchase and a surrender of the notes given for the purchase price, or an agreement for a resale. Plaintiff is corroborated in his claims in this regard by circumstances and by testimony of other witnesses. The defendant is likewise supported in his contention. The court found that the contract had never been carried out by the parties for the purchase of the land, and that it had been, by mutual agreement, canceled, and that plaintiff had been returned his notes, and was not entitled to an accounting under the claim made for the price at which the farm was sold by the defendant.

We have not attempted to set out the evidence on either side of the question. To do so would unduly extend this opinion and serve no useful purpose. We have, however, examined it carefully, and find that there was a very decided and sharp conflict in the evidence. There is force in plaintiff's contention that the preponderance of the evidence, as disclosed by the printed record, appears to favor the plaintiff, at least as to some items.

We are constituted a court for review of errors of law only, in actions of this character. It is not within our province to try fact questions, where the facts are in dispute, and substitute our judgment for that of a jury or of a trial court, sitting as a trier of facts in a law action. The verdict of a jury or the findings of a trial judge on a fact question in a law action may not be such as we would reach if sitting as jurors, but where the verdict has substantial support in the evidence, we cannot and we should not interfere.

1. APPEAL AND ERROR: review: conflicting testimony.

In the instant case, the lower court had the advantage of having the witnesses before it, and decided that the plaintiff had not sustained his contention as to this particular item by that preponderance of the evidence which the law requires. At most, the evidence is in sharp conflict. If it were an initial question, we might reach a different conclusion on the facts. We cannot interfere, under such circumstances, and the finding of the lower court against the plaintiff on this fact question must stand. See *Hamilton v. Iowa City Nat. Bank,* 40 Iowa 307; *Leighton v. Orr,* 44 Iowa 679; *Altman & Co. v. Farrington,* 45 Iowa 620; *Wood & Sons v. Griffith,* 141 Iowa 314; *Robbins v. Selby,* 144 Iowa 407; *Hoyt v. Griggs,* 164 Iowa 672; *Beatty v. Snouffer,* 164 Iowa 746; *Sprecher v. Ensminger,* 167 Iowa 118, 122; *Beh v. Van Ness,* 190 Iowa 151.

II. A contract under which the plaintiff claimed to have earned commissions on land sold by the defendant to buyers produced by the plaintiff contained this clause:

2. BROKERS: commission: "when deal closed and title passed."

"Their commission to be $3.00 per acre on all lands sold to their prospects, and due when deals are closed and title passed."

The court held that no commission was earned under said

contracts until the deal was finally closed and title passed, and that, if this was never done, no commission would be due to the plaintiff. It is the plaintiff's contention that this provision does not affect the right to the commission, but only fixes the time at which it is to be paid; or, in other words, it is his contention that, if he produced a buyer under this contract to whom lands were in fact sold, he was entitled to his commission, even though the deals were never closed and the title never passed.

The rights of the parties in respect to this matter are fixed and determined by the language of the contract which they entered into. The plaintiff's contention is that, under the terms of this contract, when he procured a party whom the defendant accepted as a purchaser, and to whom the defendant sold land, thereupon the plaintiff became entitled to his commission, and that the amount thereof was fixed by the terms of the contract at $3.00 per acre. It is his contention that the provision "and due when deals are closed and title passed" only postpones the time of payment of the commission until the deal is closed and title passed. Plaintiff argues that, if he procured a purchaser under this contract whom the defendant accepted, and with whom the defendant made a valid contract of sale, and if such purchaser was one against whom such contract could be enforced, especially if he was one who made a substantial cash payment at the time of making the contract, the defendant could not thereafter defeat the plaintiff's right to commission by abandoning the contract with the purchaser or by failing to close the deal and pass title. On the other hand, it is the contention of the defendant that the meaning of this clause in the contract is that the plaintiff was in no event entitled to the commission on a sale to any purchaser he procured, unless the transaction was finally and completely consummated, and the title passed to such purchaser.

Authorities are of little assistance to us in construing this contract. The ordinary commission cases cited, where a plaintiff is suing for a commission claimed to have been earned because of the procurement of a purchaser "ready, able, and willing to buy," are in no way determinative of the question involved in this case. It is merely a question of the construction

of the terms of this contract, and this clause must be read and construed in its entirety.

In *Greusel v. Dean,* 98 Iowa 405, the contract provided for the payment of a commission when the agent "should succeed in disposing of said property." We said:

"We hold that, in a case like this, when the agent undertakes to dispose of the property, his commission is not earned when the parties enter into a contract of sale, when, by reason of failure of title in the purchaser to land he is to deed the seller, he is unable to comply with his contract. There is in such a case no disposal of the property, within the meaning of the contract, and until such disposal, no commission is due the agent."

In *Ball v. Davenport,* 170 Iowa 33, we considered the words "consummation of said deal." In referring to the *Greusel* case, supra, we said:

"Of course, one who is 'to dispose of property' before a commission is due cannot recover if the property is not disposed of, even though a contract is made which will dispose of the property if the contract be performed. This is but saying that no recovery on a contract can be had without performing that contract. * * * There is and can be no law which prevents one from agreeing to pay for the mere getting of a contract to exchange, nor another from agreeing that nothing shall be paid him until the exchange is actually effected."

In the *Ball* case, the court submitted to the jury the question of the meaning of the words "consummation of said deal." One of the foregoing cases deals with the clause "consummation of the deal," the other, with the clause "disposing of property;" but neither one of them is decisive of the interpretation to be placed upon the contract in the case at bar. We think that the trial court was correct in the interpretation of the language used in this contract. By it the parties fixed the amount of the commission that was to be paid on land sold, and provided that nothing was to be paid to the plaintiff for procuring any of such buyers until the purchases made by such buyers were consummated and effectuated, and the title to the land sold had actually passed. We think it was the clear intention of the parties that

the plaintiff was not to be entitled to his commission merely because he produced a purchaser who was willing to enter into a contract for the purchase of the defendant's land.

Some force should be given to the fact of the situation of the parties and their evident purpose and intent in entering into this contract. The defendant was a resident of the state of Texas. The plaintiff lived in Iowa. The plan was that the plaintiff was to secure prospective purchasers in Iowa and conduct them to Texas for the purpose of buying lands which the defendant had for sale. It is quite evident that it would be impossible for the defendant, before entering into a contract of sale with such purchasers, to make a full and complete investigation and ascertain the financial standing and abilities of said parties to carry out contracts which they might make. It is evident also that, in view of this situation, the defendant provided that, while such purchasers procured by the plaintiff might be accepted and lands sold to them, he should not be liable for commissions unless the purchases were completed, and the land paid for and deeded to such purchasers. This would protect the defendant from the possibility of being liable for commissions to purchasers procured by the plaintiff who might be unable financially to comply with their contracts. On the other hand, if the commission became due as soon as a purchaser was accepted by the defendant, it would place him in the position of either having to pay a commission to any purchaser whom the plaintiff might procure, whether he was financially responsible or not, or else compel him to withhold the making of contracts of sale to prospective purchasers until he could make such investigation as he deemed necessary, regarding their financial standing and responsibility. It is obvious that this would be a serious handicap, and might result in the failure to make desirable sales.

The contract as made required the plaintiff to procure purchasers who were financially responsible, and who would, in good faith, carry out contracts of purchase. It protected the defendant from liability for sales to irresponsible purchasers, or those who would not perform. We are convinced that a fair construction of the language used in the contract, under the circumstances disclosed, was to the effect that the defendant was

not to be liable to the plaintiff for commissions due for land sold to purchasers procured by the plaintiff, unless the contracts so made were carried out and consummated by the payment of the purchase price and the transfer of the title to such purchaser. This, of course, is not a holding that the defendant could arbitrarily refuse to perform a contract of sale and pass title to a responsible purchaser who was insisting upon performance, and 'thus defeat the plaintiff of his commission.

No question of fraud or bad faith is involved in this case. We hold that, under the terms of the contract, something more than the mere making of a contract of sale was required, in order that the plaintiff might earn his commission, and that no commission was due unless such contract of sale was consummated and effectuated by the closing of the transaction and passing of title. As bearing on this question, see *Nutting & Co. v. Kennedy*, 16 Ga. App. 569 (85 S. E. 767).

III.  Numerous errors are assigned on the admission of testimony and the rulings of the court in sustaining motions to strike testimony from the record. In some instances, the objections came too late, being in the form of motions to strike answers where no objections had been interposed to the question. We have examined each of these errors. No useful purpose would be served by setting out these several rulings in detail, but we find no reversible error in such rulings.

IV.  The court found that there was due to the plaintiff, as commissions from the defendant on three separate sales, a total of $800, and entered judgment in favor of plaintiff for said sum, with interest. The defendant has appealed from this judgment. The main contention of the defendant in this matter is that the evidence fails to show that there was any contract between the plaintiff and the defendant for the payment of commission, but he contends that the contract was made with Jackson, who was one of the agents of the defendant, and that, if there is any liability for commission, it is from Jackson to the plaintiff, rather than from the defendant. There is evidence that the plaintiff was employed as the subagent of Jackson; but the evidence also shows, and the court was justified in finding, that, after the plaintiff had gone to Texas, he had an' interview there with the defendant, who then told him that he, the de-

fendant, would pay the agreed commission direct to the plaintiff. The plaintiff testifies to this, and has some corroboration in the evidence; and the findings of the court in this matter cannot be disturbed by us.

We have examined the record with regard to the commissions on the sales made to the purchasers Tigner, Winey, and Dewey. We think that the court was justified, under the evidence, in finding that there was an agreement with the plaintiff to pay commissions on all of these sales. Tigner received part of the commissions that were due on the Winey and Dewey deals, and the balance of the commissions on all three of said deals was due to the plaintiff. He was entitled to judgment therefor, with interest. We find no error in regard to this matter of which the defendant can complain.

On both appeals, the case is, therefore,—*Affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.