JAMES GREENWAY, Appellant, v. JOHN R. MAYNES et al.,
Appellees.

**BROKERS:** Compensation—Purchaser ''Able'' to Buy. A broker who
1   pleads that he produced a purchaser who was ready, willing, and
    *able* to turn in certain real and personal property in payment of

the broker's principal must establish that the purchaser so produced had *title* to said real and personal property, or was otherwise in a position to deliver said property.

**BROKERS:** Compensation—Construction of Contract. Contract for the
2  payment of a broker's commission *"if he made the deal"* reviewed, and construed to mature a right to such commission only in case the sale or exchange was *fully* consummated.

*Appeal from Pottawattamie District Court.*—E. B. WOODRUFF, Judge.

DECEMBER 14, 1923.

ACTION to recover a commission for the exchange of real estate. At the close of plaintiff's evidence, the court directed a verdict in behalf of the defendants, and the plaintiff appeals.— *Affirmed.*

*Ferguson, Barnes & Ferguson* and *Cullison & Wyland,* for appellant.

*Fremont Benjamin* and *Preston & Dillinger,* for appellees.

FAVILLE, J.—The appellee John R. Maynes was the owner of a farm of 940 acres, located in Taylor County. Appellee Vernon Maynes is his son. Appellant is a real estate broker.

In the spring of 1921, the son had a conversation with appellant in regard to the sale of said farm, and later, appellant had a conversation with the appellee John R. Maynes, in regard to the sale or trade of said premises. Appellant's contention is that a contract of exchange was entered into between appellee John R. Maynes and the owners of a certain ranch in Nebraska, and that the transaction was brought about through the efforts of appellant; and this suit is brought for his commission. We refer to John R. Maynes as though he were the sole appellee.

It appears from the evidence that appellant, through a land agent in Omaha, got in touch with Postle & Sim, as prospective buyers, to exchange a Nebraska ranch of about 8,500 acres for appellee's farm. These parties came to Taylor County, and inspected the premises of appellee. Appellant interviewed ap-

pellee, who thereafter went to Nebraska and inspected the ranch
in question and the cattle situated thereon, and a contract of
exchange was entered into in writing between said Postle & Sim
and the appellee.   By the terms of said written agreement,
Postle & Sim were to sell and convey unto Maynes the Nebraska
ranch, free and clear of incumbrances, except $78,500, and were
to transfer certain personal property, subject to incumbrances of
$22,250.   Appellee was to convey his 940-acre farm in Taylor
County, subject to an incumbrance of $85,000, and to put in
certain personal property, free of incumbrance.   The contract
provided that the parties were to have until May 4, 1921, to
complete the same, and that the respective deeds and abstracts
were to be placed in escrow in a bank at Bridgeport, Nebraska,
on or before May 20, 1920.   Possession of the respective proper-
ties was to be given on or before June 1, 1921.   The contract
provided that a failure on the part of either party to perform
should entitle the other party to $10,000 damages.

Appellant's petition is in two counts.

I.   We take up first the consideration of Count 2 of the
petition, which alleges that appellees "listed with him, for sale
or trade, a farm owned by them in Taylor County, Iowa, con-
sisting of about 940 acres of land; that they agreed to pay to
him the sum of $1,000 as a commission, provided he found a
customer ready, able, and willing to buy or trade for said land;
and that said agreement was oral."   Appellant alleges that he
performed such contract, and did procure such a purchaser.

The burden rested upon appellant to establish the allega-
tions of this count of his petition; and before he would be en-
titled to recover, it was necessary that he produce proof that the
purchaser whom he did procure was ready, able,
and willing to perform the contract which he
claims he was instrumental in bringing about
between the parties.   There was sufficient evidence in the record
to take to the jury the question of the purchaser's being ready
and willing to effectuate the exchange of properties; but the
record fails to contain any sufficient evidence to submit to the
jury the question of the proposed purchaser's being *"able"*
to perform.   The mere fact that the purchaser was willing to
sign a contract for the exchange of properties is not proof of

1. BROKERS: com-
pensation:
purchaser "able"
to buy.

his ability to perform the contract on his part. There is no proof in the record that the proposed purchaser held the title to the Nebraska property, except the inference from the admission of the appellee that deeds to the Nebraska property had been deposited in a bank in Bridgeport, and some slight evidence that the parties were in possession of the premises. Aside from this, the contract required that the Nebraska property should be conveyed subject to certain mortgages, and that a certain amount of personal property should be conveyed, with certain incumbrances thereon. There is an utter failure of proof that the purchasers were in a position to deliver said property, both real and personal, according to the terms of the contract. Presumptions are not sufficient to supply the necessary proof in behalf of appellant in this regard. Under this count of his petition, it was incumbent upon him to establish that he did procure a purchaser who was not only ready and willing, but was in fact able, to perform the terms of the contract of exchange that was entered into. This he failed to do by sufficient evidence to carry this question to the jury, and the court did not err in directing a verdict in behalf of appellee as to Count 2 of appellant's petition.

II. Under Count 1 of his petition, appellant alleges that:

"Said defendants listed said farm of 940 acres in Taylor County, Iowa, with the plaintiff herein for sale or exchange, with the agreement then and there made that, if the plaintiff would procure a person or persons who would purchase or trade for said Taylor County land, and who would enter into a contract with the defendants for the purchase or exchange of said tract of land, satisfactory to the defendants, that the said defendants would pay to the plaintiff as commission therefor the sum of $1,000 when said contract of sale or trade was signed by said defendants or accepted by them; and that said contract of listing for sale or exchange was oral."

2. BROKERS: compensation: construction of contract.

The question is as to whether or not appellant produced any testimony to support this allegation of his petition.

In regard to the agreement between appellant and appellee, appellant testified that he "told Mr. Maynes that he [Vernon] had listed this land with me for sale or trade, and was to pay me

a commission of $1,000 if I traded the Baltinghouse farm of 940 acres. That was the commission that I was to receive,—$1,000. That is about all that was said at that time; and they left for the west. We just had a little talk of that, and we agreed on that. That is, he was to give me $1,000 commission.''

He then testified with regard to conversations with appellee regarding the Nebraska ranch and the promise to examine the same. He also testified that:

''Mr. John R. Maynes said he would trade his 940 acres for the ranch, if the ranch suited him when he got there. That is what he said to me. He spoke of the $1,000, and that they would pay me. That is what they said.''

On cross-examination, he testified that, after he had talked with appellee about the Nebraska ranch, they requested him to telephone the agent at Omaha and arrange for their inspection of the ranch, and said:

''They were going to look for this ranch and trade for it if it suited them. That is what they came to my place for, and they said so. That was about the run of the conversation; and when we agreed to telephone, we did not talk any more. They said they would give me $1,000 commission. John R. Maynes said this. They said if they made the deal that is the last thing to do. John R. Maynes told me he would give me $1,000 if they made the deal. That is about all that he said until he looked at the ranch. Vernon and I talked it over before that, and he represented it to his dad, he said. I have told you two or three times, Mister, that Mr. Maynes agreed to give me $1,000 if the ranch suited him. I had been talking about the commission. John R. Maynes told me he would give me $1,000 if the ranch out there was satisfactory,—that is, if the ranch suited him,— and that is the words he used.''

Appellant also testified:

''He said he understood that Vern had listed the property with me for trade or sale, and he further said, any time that I could get a deal, that they would pay me $1,000 commission. He said for a sale or trade.''

The foregoing is practically the entire testimony of appellant with regard to the terms of the listing contract between him and appellee. He says that the agreement between himself

and appellee was that, "if they made the deal," appellee would pay his commission, "if the ranch suited him [appellee],—if the ranch out there was satisfactory,—that is, if the ranch suited him,—and that is the words he used."

Under this count of appellant's petition, there is no claim that appellee's farm was listed with him for exchange on any specific terms or conditions. Appellant brought to appellee knowledge of the Nebraska ranch, and was undoubtedly the cause of bringing the parties together. He does not claim that he was in any way authorized or empowered to make any terms of exchange. In fact, he did not accompany appellee to Nebraska, and had nothing to do with drawing the contract or fixing the terms of the exchange that were agreed upon. In this count of his petition, he does not seek to recover a commission because of procuring a purchaser who was ready, willing, and able to perform, nor does he claim the right to recover his commission because of a completed exchange of properties between the parties. The final conversation in regard to the matter between appellant and appellee appears to have taken place after appellee had been informed by appellant in regard to the Nebraska ranch, and at the time he was about to proceed to Nebraska for the purpose of investigating the property that was proposed to be exchanged. Appellant's contention is that at that time appellee agreed with appellant to pay his commission "if they made the deal." He further said that the agreement was that if, upon examination, appellee found that "the ranch out there was satisfactory" and "suited him," he would pay the commission of $1,000.

Under the facts and circumstances disclosed in the record, what was meant by the terms of the agreement that appellant was to receive his commission "if they made the deal?" If this refers merely to the execution of a contract for the exchange of the properties, and nothing more, then appellant would be entitled to his commission; but if, by the terms that were used, the parties intended that appellant should be paid his commission only in the event that the contemplated exchange of properties was fully effectuated and consummated, then, under the undisputed evidence in the case, appellant would not be entitled

to his commission, because there is no evidence whatever that the exchange was so finally completed.

In *Greusel v. Dean,* 98 Iowa 405, the contract with the broker was that he should receive a commission ''whenever he should *succeed in disposing of* said property, in the manner, and on the terms, acceptable to the defendant.'' We held that, under the terms of such a contract, the broker had not fulfilled the same, and had not ''disposed'' of said property as contemplated by the parties, by finding one who entered into a contract for its purchase in the manner and on the terms agreeable to the defendant. We held that such a contract contemplated a completed sale and transfer of the property, or the making of such a contract of sale as was enforcible.

In *Calkins v. Alley,* 190 Iowa 1180, we had under consideration a contract by which it was provided:

''Their commission to be $3.00 per acre on all lands sold to their prospects, and due when deals are closed and title passed.''

We held that the clear intention of the parties was that the plaintiff in that case was not to be entitled to his commission merely because he produced a purchaser who was willing to enter into a contract for the purchase of defendant's land, but that no commission was due unless such contract of sale was consummated and effectuated by the closing of the transaction and passing of title.

We are of the opinion that plaintiff's evidence does no more than to bring the case within the rule of the *Greusel* and *Calkins* cases, supra. It was, therefore, incumbent on him to show, (1) either a ''completed sale,'' under Count 1, or (2) the production of a purchaser ''ready, able, and willing'' to buy or exchange on defendant's terms, under Count 2 of his petition. He failed in either event.

The judgment appealed from is, therefore,—*Affirmed.*

EVANS, STEVENS, ARTHUR, DE GRAFF, and VERMILION, JJ., concur.