*M. C. Barwick,* contra.

---

## 14626. ROWLAND & ROWLAND *v.* KRAFT.

Where the owner of certain property employs an agent at an agreed contingent price to procure from a designated person an obligation in writing, previously approved by the owner, whereby that person is to become bound to purchase the property and the owner is to become obligated to sell it at the price and on the terms stipulated by the instrument, and where the agent fully complies with the terms of his employment by forthwith presenting to the owner for his signature an instrument signed by the prospective purchaser, which instrument is in meaning precisely the same as the agreement previously approved by the owner, the agent is not to be deprived of his earned commission because of the fact that the form of the instrument contemplates that it is to be signed by the owner as well as by the purchaser, and the owner, without any fault on the part of the agent or the purchaser, fails to give binding effect to the contract of purchase and sale, by refusing to sign the proffered instrument.

Decided February 9, 1924.

Complaint; from city court of Savannah—Judge Freeman. March 14, 1923.

The evidence would have authorized the jury to find that at some time previous to the transaction involved in this case the defendant listed for sale with the plaintiffs as brokers certain real estate in the city of Savannah for the price of $55,000; that the term of this contract of listment expired, but afterwards the de-

38

fendant told the plaintiffs to continue to try to sell the property; that the plaintiffs interested in the purchase one Livingston, who authorized them to submit to the defendant an offer of $42,000; that the defendant thereupon had his own lawyers prepare a sales agreement at the latter price, which he authorized the plaintiffs to procure the proposed purchaser to sign, promising thereafter to consummate the trade, and to pay the plaintiffs $1000 for their services. The sales agreement thus furnished by the defendant to the plaintiffs provided, among its other terms, that $12,000 of the purchase price of $42,000 was to be paid in cash, and for the balance of the price the purchaser was to assume an indebtedness to the Penn Mutual Life Insurance Company—a loan of $30,000 on the property, which the purchaser was to pay at maturity. The form of this sales agreement contemplated the signature of both the purchaser and the owner. The evidence for the plaintiffs showed that Livingston signed this approved sales agreement, but that at the time of signing he interpolated in red ink, after the clause pertaining to the assumption of the existing loan, the following words, "said loan understood not to exceed 6½ per cent. interest per year." There was evidence for the plaintiffs that the owner had stated to them that the interest called for by the insurance company loan was 6½ per cent., and that they reported this fact to Livingston during the negotiations to sell. The sales agreement, after the interpolation indicated, was signed by Livingston and presented to the owner, who, after delaying action thereon for several days, refused to sign, and for this reason only the sale was not consummated. On the trial the judge granted the defendant's motion for a nonsuit.

*McIntire, Walsh & Bernstein,* for plaintiffs.

*Lawrence & Abrahams, David S. Atkinson,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) The two contentions insisted upon by defendant in error are: (1) that, since the form of the sales ticket, approved by the defendant and under which the plaintiffs were authorized to operate, provided within itself for a binding contract for the sale of land, and contemplated signature by the defendant as owner as well as by the purchaser, it could not become operative as a basis for the recovery of commissions until after it had been signed by the defendant; and (2) that the terms of the approved sales ticket had been so altered

by the proposed purchaser at the time it was signed by him as to relieve the defendant from any obligation to the plaintiffs for commissions.

1. In cases involving an ordinary contract of brokerage "the broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Civil Code (1910), § 3587. In this case, however, it appears from the evidence for the plaintiffs themselves that the defendant obligated himself to pay the commission only upon the condition that the plaintiffs would effect an actual binding agreement to purchase. *Humphries* v. *Smith,* 5 *Ga. App.* 340 (63 S. E. 248) ; *Nutting* v. *Kennedy,* 16 *Ga. App.* 569 (85 S. E. 767). More than this, the agreement between the defendant owner and the plaintiffs was that the purchaser was to become bound by the terms of a certain instrument, which had been prepared by the defendant's attorney and approved by himself. The form of the instrument thus prepared and approved contemplated that it be signed both by the purchaser and by the defendant. The question is not whether in such a case the signature of the owner would be necessary in order for it to evidence a binding contract for the sale of realty. This manifestly would be answered in the affirmative. But the question is whether the agent is entitled to his commission for services rendered when he has done all that he is required to do under his agreement by securing the signature of a purchaser able to perform, offering to perform, and binding himself to perform the terms of the approved sales agreement. Where in such a case there is a failure to complete the sale through no fault of the agent or of the purchaser procured by him, but solely on account of the owner's refusal to execute the agreement he had explicitly approved, we think the agent is entitled to his commission; that the owner would be liable to such an agent just as he would be to a broker under an ordinary contract of brokerage if he refuses to sell when presented with a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated. *Kesler* v. *Stults,* 15 *Ga. App.* 735 (84 S. E. 201).

2. No doctrine is better recognized than the rule which requires that in order for a contract to become binding by the acceptance of an offer, the acceptance must be unequivocal, unconditional, and

without variance. The acceptance must be of the thing offered and as offered. Any variation amounts to nothing more than a counter-proposition. *Monk* v. *McDaniel,* 116 *Ga.* 108 (3) (42 S. E. 360); *Larned* v. *Wentworth,* 114 *Ga.* 208 (2) (39 S. E. 855); *Van Winkle* v. *Harris,* 137 *Ga.* 43 (72 S. E. 424). In a sense, this principle is applicable here, because the defendant is not liable for commissions unless the purchaser procured by the plaintiffs complied with the terms of the proposition which the plaintiff was authorized to make. In the case of *Parker* v. *Stubbs,* 139 *Ga.* 46 (76 S. E. 571), it was held that, "where in a suit by a real-estate agent or broker, seeking to recover commissions from his principal on account of the procuring of a purchaser and the .refusal of the principal to consummate the sale, it appeared from the petition that the written agreement between the principal and the agent provided for the making of a sale on certain terms, and that the agent procured an offer to purchase on terms different in substantial particulars from those stated in such contract, which the principal declined, the petition was demurrable." See also *Winer* v. *Flournoy Realty Co.,* 27 *Ga. App.* 87 (2) (107 S. E. 398). Thus, if at the time the sales agreement was signed by the purchaser the interlineation by him operated in any way to actually alter the terms of the agreement which the defendant had authorized the plaintiffs to procure, then the defendant would not be liable. Under the terms of the sales agreement the buyer was to assume, as a part of the purchase price, a certain definitely identified existing loan on the property in a stated amount and payable to a named party. The words that the purchaser added in red ink to the sales agreement were as follows: "Said loan understood not to exceed 6½ per cent. interest per year." The undisputed evidence is that the loan referred to in the sales agreement and otherwise expressly described therein in fact bore 6½ per cent. interest; and that the plaintiffs had been so informed by the defendant, and they had informed the purchaser accordingly pending the latter's negotiations. Did such an interpolated statement of the defendant's understanding of an existing fact change in the slightest degree the terms of the agreement which the plaintiffs were actually authorized to procure? The original sale agreement referred to an actual, existing, definite loan, which the purchaser was to assume. That being certain which can be made certain, it follows

that even the original agreement fixed and provided the amount of the interest payment which the purchaser was to assume—not directly, it is true, but by reference. An interpolation which directly assumes that to be true which is in fact the truth and capable of proof, and which is already stated with certainty, though by indirection, does not constitute a material alteration. It did not in any way or to any extent change the meaning of the contract from what it was to what it was not. See, in this connection, 1 Williston on Contracts, 136, § 78; Curtis Land & Loan Co. v. Interior Land Co., 137 Wis. 341 (118 N. W. 853, 129 Am. St. R. 1068); Morse v. Tillotson, 253 Fed. 340; Ryder v. Johnson, 153 Ala. 482 (45 So. 181); Bennett v. Cummings, 73 Kan. 647 (85 Pac. 755); Cavender v. Waddingham, 5 Mo. App. 457; Brown v. Norton, 50 Hun. 248 (2 N. Y. Supp. 869). According to the evidence for the plaintiffs, it appears that for an agreed contingent compensation they had been authorized by the defendant to procure from a particular person an obligation in writing, approved in form by the defendant, whereby that person was to become obligated to purchase certain property of the defendant at the price and on the terms therein indicated; and that the plaintiffs had fully complied with the terms of the proposal by forthwith presenting to the defendant for his own signature an obligation to purchase the property, which the purchaser signed, the terms of which, as has been already indicated, in no way varied from those which the defendant had approved; that there was a failure to consummate the contract of purchase and sale solely by reason of the defendant's refusal to sign the obligation, and without any cause or fault on the part of plaintiffs or the purchaser procured by them. Since the jury could have accepted this version of the testimony, it was error to grant a nonsuit.

*Judgment reversed. Stephens and Bell, JJ., concur.*